Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Sami S. Mrza, appellant.
___ N.W.2d ___

Filed April 19, 2019.   No. S-18-372.

1.  **Effectiveness of Counsel: Appeal and Error.** Assignments of error
    on direct appeal regarding ineffective assistance of trial counsel must
    specifically allege deficient performance, and an appellate court will not
    scour the remainder of the brief in search of such specificity.
2.  ____: ____. Whether a claim of ineffective assistance of trial counsel
    may be determined on direct appeal is a question of law. In reviewing
    claims of ineffective assistance of counsel on direct appeal, an appellate
    court decides only whether the undisputed facts contained within the
    record are sufficient to conclusively determine whether counsel did or
    did not provide effective assistance and whether the defendant was or
    was not prejudiced by counsel's alleged deficient performance.
3.  **Effectiveness of Counsel: Postconviction: Records: Appeal and
    Error.** When a defendant's trial counsel is different from his or her
    counsel on direct appeal, the defendant must raise on direct appeal any
    issue of trial counsel's ineffective performance which is known to the
    defendant or is apparent from the record, otherwise, the issue will be
    procedurally barred in a subsequent postconviction proceeding.
4.  **Effectiveness of Counsel: Records: Appeal and Error.** The fact that
    an ineffective assistance of counsel claim is raised on direct appeal does
    not necessarily mean that it can be resolved. The determining factor is
    whether the record is sufficient to adequately review the question.
5.  **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of
    ineffective assistance of counsel under *Strickland v. Washington*, 466
    U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must
    show that his or her counsel's performance was deficient and that this
    deficient performance actually prejudiced the defendant's defense.

6. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

7. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

8. **Trial: Effectiveness of Counsel: Presumptions: Appeal and Error.** In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

9. **Rules of Evidence: Proof.** A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.

10. **Rules of Evidence.** Generally, the foundation for the admissibility of text messages has two components: (1) whether the text messages were accurately transcribed and (2) who actually sent the text messages.

11. ____. The rule of completeness allows a party to admit the entirety of an act, declaration, conversation, or writing when the other party admits a part and when the entirety is necessary to make it fully understood.

12. **Trial: Prosecuting Attorneys: Appeal and Error.** When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, an appellate court will review the record only for plain error.

13. **Appeal and Error.** An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

14. **Motions for Mistrial: Prosecuting Attorneys: Waiver: Appeal and Error.** A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct.

15. **Trial: Prosecuting Attorneys: Words and Phrases.** Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

16. **Trial: Prosecuting Attorneys: Juries.** Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.

17. \_\_\_\_: \_\_\_\_: \_\_\_\_. A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.

18. **Trial: Prosecuting Attorneys.** In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

19. \_\_\_\_: \_\_\_\_. Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole.

19. **Trial: Prosecuting Attorneys: Appeal and Error.** In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction.

21. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

22. **Sexual Assault: Testimony: Proof.** The State is not required to corroborate a victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient.

23. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Sanford J. Pollack, of Pollack & Ball, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

Sami S. Mrza appeals his jury conviction and sentencing for first degree sexual assault. Although he assigns multiple errors, we focus on two issues: the authentication requirement for "Snapchat" evidence and the prosecutor's comment on Mrza's use of an interpreter. Because the evidence was properly authenticated, trial counsel did not perform deficiently in failing to object to it. We find no plain error in the prosecutor's closing argument, but determine that the record is not sufficient to address Mrza's related claim of ineffective assistance of trial counsel. We find no error in Mrza's other assignments, and because the record is insufficient, we do not reach other ineffective assistance of counsel claims. Therefore, we affirm.

## II. BACKGROUND

Mrza emigrated from Iraq to the United States in December 2014. In the fall of 2016, Mrza met N.W., the victim, in a class at a community college. The conviction flowed from an event on November 12, 2016, which we summarize in more detail later in this opinion.

The State charged Mrza with first degree sexual assault, pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2016). Mrza pled not guilty. The case proceeded to a jury trial. Throughout the trial, Mrza utilized an interpreter. Both N.W. and Mrza testified. The jury found Mrza guilty, and the court sentenced him to 8 to 15 years' imprisonment.

Mrza filed a timely appeal, which we moved to our docket.[1]

## III. ASSIGNMENTS OF ERROR

We have reordered and restated Mrza's numerous assignments of error, recognizing two primary issues. The first

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

assigns that because trial counsel did not object to the authenticity of "Snapchat" evidence, counsel was ineffective. The second assigns prosecutorial misconduct for "inflammatory and prejudicial statements made during closing arguments." As an alternative on this second issue, Mrza assigns ineffective assistance of trial counsel in failing to move for a mistrial based on those statements.

His remaining assignments of error assert that the evidence was insufficient, the sentence was excessive, and trial counsel was ineffective in two other instances, by failing to move to suppress Mrza's statements to law enforcement and by "fail[ing] to adequately investigate [Mrza's] defenses and effectively cross-examine witnesses."

[1] We observe that Mrza's last assignment lacked the specificity we demand on direct appeal. We have held that when raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[2] And we have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[3] It follows that we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance.[4] We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Although we will not do so in the future, we have synthesized a specific assignment from the argument section of Mrza's brief, which asserts that trial counsel was ineffective in

---

[2] See *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[3] See, e.g., *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019).

[4] See *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018) (declining to scour record in search of facts that might support claim).

failing to investigate the time between the assault and N.W.'s first interview with law enforcement for possible defenses by failing to (1) subpoena cell phone records of N.W. and the friend she called following the event, (2) investigate the relationship between N.W. and her friend, (3) subpoena video from the restaurant where N.W. and Mrza met before the event, and (4) subpoena Snapchat to obtain self-destructing messages from Mrza, N.W., and N.W.'s friend.

## IV. ANALYSIS

### 1. SNAPCHAT AUTHENTICATION

Mrza argues that his trial counsel was ineffective in failing to object, on the ground of authenticity, to "Snapchat" evidence.

### (a) Additional Facts

The night after the incident, Mrza initiated a conversation with N.W. via Snapchat (Snapchat is a photograph- and text-sharing social media application). At trial, the State questioned N.W. about the Snapchat conversation. N.W. testified that Mrza was her "friend" on Snapchat. They became friends when they added each other's "usernames." She knew it was his account because she typed in the username that he told her. Later, when offering the Snapchat conversation as evidence, N.W. stated that she knew the messages were between herself and Mrza, because "it has his name on it." She affirmed that the photographs of the conversation contained a fair and accurate depiction of the conversation. In the conversation, N.W. directly questioned Mrza about why he did certain things to her after she told him to stop. He apologized for his actions and promised not to do it again. After the State offered the evidence, trial counsel did not object and the court admitted it.

### (b) Standard of Review

[2] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In

reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

### (c) General Principles Regarding Ineffective Assistance of Counsel

[3,4] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[6] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.[7] Regarding the Snapchat evidence, we conclude that the record is sufficient to address Mrza's claim.

[5-8] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[8] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[9] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[10] To show prejudice, the

---

[5] *State v. Smith, ante* p. 154, 922 N.W.2d 444 (2019).

[6] *Id.*

[7] *Id.*

[8] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[9] *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018).

[10] *Id.*

defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[11] In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.[12]

### (d) Analysis

The parties disagree as to which standard should be applied to the authentication of the Snapchat messages. The State contends that authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[13] Mrza argues instead that the text message standard of authentication should be applied. Specifically, he argues that because Mrza testified that there were more messages to the conversation, the State failed to show that the messages were an accurate transcription of the conversation.

[9] The State's formulation is a correct statement of the evidence rule governing authenticity.[14] This rule does not impose a high hurdle for authentication or identification.[15] A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.[16]

[10] Even if Mrza were correct that the text message authentication standard governs messages sent over social media applications, his claim would fail. Generally, the foundation for the admissibility of text messages has two components:

---

[11] *Id.*

[12] *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

[13] See Neb. Evid. R. 901(1), Neb. Rev. Stat. § 27-901(1) (Reissue 2016).

[14] See *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018).

[15] *Id.*

[16] *Id.*

(1) whether the text messages were accurately transcribed and (2) who actually sent the text messages.[17] Mrza does not challenge the second prong of this test, but argues only that the State failed to prove that the messages were accurately transcribed. In that regard, he conflates accuracy with completeness.

[11] Contrary to Mrza's argument, the existence of other messages does not undermine the accuracy of the messages that were offered. Mrza does not argue that the exhibit received in evidence was not accurate as far as it went. Instead, he argues that there were other messages not included in the exhibit. Essentially, his argument attempts to invoke the rule of completeness[18] under the rubric of authenticity. The rule of completeness allows a party to admit the entirety of an act, declaration, conversation, or writing when the other party admits a part and when the entirety is necessary to make it fully understood.[19] The rule of authentication did not require the State to offer all of the Snapchat messages in evidence. Where there is nothing to suggest that the other messages were relevant or the evidence entered was misleading or prejudicial, the State was not required to enter the entirety of the conversation into evidence.[20]

If Mrza believed that other messages were necessary to make the conversation fully understood, it was his obligation to offer them. But this was not a matter of authentication. Because N.W. testified to the accuracy of the Snapchat messages between herself and Mrza, it was sufficient to show that the messages were accurately transcribed and properly authenticated. Therefore, Mrza's trial counsel did not perform deficiently in failing to assert an objection based on authentication.

---

[17] *Id.*

[18] See Neb. Evid. R. 106, Neb. Rev. Stat. § 27-106 (Reissue 2016).

[19] *Id.*; *Savage, supra* note 14.

[20] See *Savage, supra* note 14.

## 2. Prosecutorial Misconduct

Mrza argues that the prosecutor's closing argument discussing Mrza's use of an interpreter was prejudicial misconduct. Mrza also asserts that to the extent his claim of prosecutorial misconduct was not preserved, his trial counsel was ineffective in failing to move for a mistrial.

### (a) Additional Facts

In discussing his assignment of ineffectiveness of counsel in failing to move to suppress Mrza's statements, his appellate brief acknowledges that his "ability to speak and understand the English language" was the subject of extensive testimony "[t]hroughout the case."[21] His brief recites that there was concern at a pretrial hearing whether he had "understood his waiver of a preliminary hearing," because he had not been provided an interpreter in the county court.[22] His brief argues that he had an "imperfect grasp" of the English language.[23]

At trial, the parties addressed Mrza's English language proficiency. In the State's opening statement, it foreshadowed evidence about Mrza's college courses taught in English and how he communicated with N.W. only in English. In Mrza's opening statement, he responded by outlining Mrza's testimony about reading his textbooks numerous times when studying and that he did well in his classes.

This continued when evidence was presented. During N.W.'s direct examination, she stated that her classes were taught in English, she communicated with Mrza in English, he understood her when she spoke in English, she understood his English, and his class notes were in English.

The police sergeant who investigated the case stated that he interviewed Mrza in English and that Mrza appeared to understand English. The investigator testified that Mrza never

---

[21] See brief for appellant at 32.

[22] *Id.*

[23] *Id.*

indicated he did not understand English and that he did not read Mrza his *Miranda* rights until he determined that Mrza understood English. Both a video and audio recording and a typed transcript of the investigator's interview of Mrza were received in evidence and displayed to the jury.

On direct examination, Mrza stated that he studied English for 3 years at a university in Kurdistan; that his current textbooks were in English, which he read them two or three times to understand; and that he did not feel that he understood English well enough to understand his trial. On cross-examination, Mrza stated he switched from the English "yes" to the Kurdish "yes" because he was "saying almost everything in Kurdish" already; he took four English classes at a community college in Lincoln, Nebraska; all his classes were taught in English; during class, he rarely used the translation application on his cell phone; and he had a "3-plus" grade point average.

Mrza's prosecutorial misconduct argument focuses on the State's closing argument, when the prosecutor argued, "But I'd submit to you, ladies and gentlemen, this interpreter thing that we've got going on here is a charade. And it's done to try to garnish some type of sympathy from you guys." The prosecutor then commented on Mrza's ability to understand English. This comment cited Mrza's academic record and how he took all his classes in English and received high grades. The prosecutor recalled Mrza's use of English slang in the Snapchat conversation and argued that someone who does not understand English could not text in slang. This argument also called attention to Mrza's trial testimony in which he answered the first half of the direct examination with the English "yes," but after lunch switched to the Kurdish equivalent. Mrza's trial counsel did not object or move for a mistrial.

In Mrza's closing argument, his trial counsel responded by arguing that although Mrza understands English, when interviewed by law enforcement, he used "clunky" English and was difficult to understand in the video. Trial counsel rhetorically

questioned who, "in today's political climate," would try to garner sympathy by claiming to be a refugee. In the State's rebuttal closing argument, it briefly responded by arguing that Mrza's inconsistent statements to law enforcement were not from a lack of understanding English, but because he was distracted and thinking about what he did.

In instruction No. 10, the court told the jury that there was evidence that Mrza had made a statement to a law enforcement officer and that it could rely on the statement only if it decided beyond a reasonable doubt that he made the statement, he understood what he was saying, and the statement was freely and voluntarily made under all of the circumstances surrounding its making. Otherwise, the court instructed, the jury must disregard Mrza's statement even if it thought it was true.

### (b) Standard of Review

[12,13] When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, we will review the record only for plain error.[24] An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[25] Generally, we will find plain error only when a miscarriage of justice would otherwise occur.[26]

### (c) Analysis

Mrza argues that the prosecutor committed misconduct in his closing argument when he argued that Mrza's use of an interpreter at trial was a charade used to garner sympathy from the jury. Mrza contends that the statements were improper, because there was no issue at trial regarding his

---

[24] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[25] *Id.*

[26] *Id.*

proficiency in English. Mrza contends that the statements were the expressions of the prosecutor's personal beliefs and were designed to inflame the prejudices of the jurors. In addition to arguing that the prosecutor's closing argument comments were plain error, Mrza argues that counsel was ineffective for failing to object and request a mistrial. We address this issue with Mrza's remaining ineffective assistance of counsel assignments below.

[14] The State responds that Mrza failed to preserve the purported misconduct. The State is correct. A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct.[27] Because Mrza did not move for a mistrial, the alleged error was waived. Accordingly, our direct review of this issue is confined to a search for plain error.

[15-18] Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.[28] Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.[29] A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.[30] In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.[31]

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

Nebraska courts have not discussed the propriety of a prosecutor's comments on the use of or need for an interpreter. We turn to the decisions of federal and other state courts for guidance.

In *Andrade v. U.S.*,[32] the District of Columbia Court of Appeals assessed a similar situation and determined that the conduct did not rise to the level of plain error. There, the appellate court concluded that the prosecutor had arguably transcended the bounds of permissible comment by making comments during cross-examination about the defendant's use of an interpreter and then using these parts of the cross-examination during closing argument to express an opinion about the defendant's veracity. In the prosecutor's cross-examination, she commented on the defendant's use of an interpreter by telling him, "'you are not going to hide behind translation.'"[33] During closing argument, the prosecutor recounted the defendant's testimony during cross-examination denying that his attorney had told him what to say, and then she commented, "'And then he tries to hide behind the interpretation, maybe, maybe she doesn't translate for you. My questions were simple and they were direct and Spanish is not a very complicated language.'"[34] In determining that there was no plain error requiring reversal, the appellate court relied on the trial court's curative steps in ensuring proper interpretation and use of an interpreter.

In *Diaz v. U.S.*,[35] the District of Columbia Court of Appeals discussed a prosecutor's comments during a "relatively long rebuttal"[36] argument regarding a defendant's use of an interpreter. According to the appellate court, the prosecutor had "ignored the factual record, implying that [the defendant]

---

[32] *Andrade v. U.S.*, 88 A.3d 134 (D.C. 2014).

[33] *Id*. at 140.

[34] *Id*. at 141.

[35] *Diaz v. U.S.*, 716 A.2d 173 (D.C. 1998).

[36] *Id*. at 180.

lied when he said he didn't understand what [the alleged victim] said to him in English even though he had 'corrected [the interpreter's] English translation of what he had said.'"[37] Because the comments expressed personal opinion on the veracity and credibility of witnesses, the court concluded the comments, as a whole, were improper. In assessing the prejudicial value of the comments, the court did find that the corrective instructions by the court, instructing the jury about the role of the interpreter and that arguments by counsel are not evidence, ameliorated any harm from the statements. Other factors showed that the comments did not mislead the jury, the case turned on the credibility of witnesses, and there was sufficient evidence without the comments to believe the victim. The appellate court held that the defendant was not prejudiced by improper comments.

In *U.S. v. Ganadonegro*,[38] the U.S. Court of Appeals for the 10th Circuit assessed whether questions asked and objected to on cross-examination about the use of an interpreter amounted to prosecutorial misconduct. In opening statements, defense counsel discussed how the interpretation of "'shaking'" from English to Navajo would be the crux of the trial.[39] When the FBI interviewed the defendant, he had an interpreter present. An expert testified to the defendant's competency in English and how he may have responded appropriately, even if he did not fully understand what was being said. During cross-examination of the defendant, the prosecutor extensively questioned him about his use of an interpreter, which drew several objections from defense counsel. The prosecutor drew a concession when the defendant admitted that he used the interpreter once in his first trial. The court concluded that the prosecutor's conduct was not improper, because the defendant's defense relied heavily on his language proficiency.

---

[37] *Id.*

[38] *U.S. v. Ganadonegro*, 560 Fed. Appx. 716 (10th Cir. 2014).

[39] *Id*. at 718.

Therefore, the prosecution was entitled to pursue the theory of the defense.

In *State v. Heredia*,[40] the defendant challenged comments made by the prosecutor during cross-examination and closing argument about his use of an interpreter not under the Due Process Clause, but under the 5th, 6th, and 14th Amendments to the U.S. Constitution. During cross-examination, the prosecutor asked, "'You say that you don't speak English that well?'"; "'You were able to get a social security card, right, this one in your wallet?'"; and "'Are you given any kind of a test when you come to court to decide whether or not you need an interpreter?'"[41] During closing argument, the prosecutor made the following statement: "'And I'd ask you not to be persuaded by his demeanor when he's on the stand, when he leans over and looks, kind of sits down, slouched over, looks up at the interpreter and says, "como, como," like he doesn't know what's going on.'"[42] The Supreme Court of Connecticut reasoned that the comments at issue did not burden the defendant's right to an interpreter, but focused on the conflict between his demeanor on the stand and the dangerous assailant described by the State's witnesses. The court concluded that there was no violation of the defendant's constitutional rights.

We have explained that "a distinction exists between arguing that a defense strategy is intended to distract jurors from what the evidence shows, which is not misconduct, and arguing that a defense counsel is deceitful, which is misconduct."[43] Similarly, we distinguish between the prosecutor's statements directing the jury toward evidence of the defendant's proficiency in English relevant to an issue, which is not misconduct, and a comment which could be construed as attacking the

---

[40] *State v. Heredia*, 253 Conn. 543, 754 A.2d 114 (2000).

[41] *Id*. at 551, 754 A.2d at 120.

[42] *Id.*

[43] *State v. Dubray*, 289 Neb. 208, 227, 854 N.W.2d 584, 605 (2014).

defendant as being deceitful or manipulative in his need for an interpreter in court proceedings.

> This does not mean that, in any case in which the defendant avails himself of the services of an interpreter, the state would be free to focus on that fact in a manner that was irrelevant to the issues in the case, or in a manner that unduly casts doubt on the necessity of those services.[44]

We have held that a defendant's inability to comprehend criminal proceedings or communicate in English at such proceedings can result in a violation of the defendant's due process and Sixth Amendment rights.[45] Prosecutors should carefully consider this distinction in commenting on language proficiency.

We agree with Mrza that the prosecutor's "charade . . . to garnish . . . sympathy" comment, viewed in isolation, did not refer to any issue at trial. A prosecutor must base his or her argument on the evidence introduced at trial rather than on matters not in evidence.[46] But Mrza's understanding of the statements that he made to law enforcement officers was at issue. The remainder of the argument, addressing facts pertinent to that understanding, was not improper. Thus, viewing the matter through the prism for plain error, we must assess the extent of prejudice associated with this isolated statement.

[19,20] Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole.[47] In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks;

---

[44] *Heredia, supra* note 40, 253 Conn. at 560, 754 A.2d at 125.

[45] *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

[46] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[47] *Id.*

(4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction.[48]

First, we turn to the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury. Viewed in isolation, that comment could be viewed as an attempt to unduly influence the jury. Regarding Mrza's interaction with N.W., his defense was not predicated on a lack of English proficiency. But his linguistic proficiency did bear on the voluntariness of his statements to law enforcement officers.

Second, we turn to whether the conduct or remarks were extensive or isolated. As we have observed, the "charade . . . to garnish . . . sympathy" comment was isolated. It was brief, particularly in the context of the 60-minute closing argument. During rebuttal argument, the State briefly discussed Mrza's comprehension but only in the context of whether he understood English when interviewed by law enforcement.

Third, we turn to whether defense counsel invited the remarks. Here, we focus specifically on the "charade . . . to garnish . . . sympathy" comment. We cannot say that defense counsel invited this particular comment; to the contrary, it seemed to have been a longstanding concern of the prosecutor.

Fourth, we look to whether the court gave any curative instruction. Mrza did not object to the comments and, accordingly, did not request a curative instruction or a mistrial. The court instructed the jury that comments of attorneys are not evidence and that their decision must be based solely on the evidence. Moreover, instruction No. 10 instructed the jury that in assessing the voluntariness of Mrza's statements, it must consider whether Mrza understood what he said.

Finally, we turn to the strength of the evidence supporting Mrza's conviction. The evidence ultimately presented a classic "she said, he said" situation. In that situation, Mrza's statements to law enforcement officers were important to the State's

---

[48] *Id.*

case. Thus, his understanding of those statements was essential to the jury's reliance on his statements. But because the strength of the State's case highly depended upon a comparison of Mrza's credibility to that of N.W., even an isolated comment had the potential for unfair prejudice.

After considering the above factors in the context of a review for plain error, we conclude that the isolated comment did not clearly demonstrate prejudice. Therefore, we do not find plain error in the prosecutor's closing argument.

### 3. Sufficiency of Evidence

Mrza argues that the evidence was insufficient to support his conviction. We disagree.

### (a) Additional Facts

We recite these facts in the light most favorable to the State. On the evening of November 12, 2016, N.W. sent a message via Snapchat asking Mrza to go to dinner with her. They met at 11:30 p.m. at a restaurant on North 27th Street in Lincoln. Around 1 a.m., they finished their meals, but N.W. did not want to go home and suggested that they "cruise O Street." Mrza agreed and offered to drive.

Upon entering Mrza's vehicle, Mrza hugged N.W. with both hands on her mid-back. Mrza began kissing her neck. Mrza pulled down the collar of N.W.'s T-shirt to expose her breast and began kissing her breast. Mrza asked if she liked it, and she responded, "'Yes.'" Mrza began rubbing her vagina on the outside of her pants. Again, he asked if it felt good and she said, "'Yes.'"

Mrza moved his hand underneath her pants. She stated that she "wasn't okay with that" and told him, "'Stop. I don't want to do this.'" Mrza digitally penetrated N.W. N.W. stated that Mrza was "getting frustrated" with her and was forcefully putting his fingers in and out of her vagina. Mrza removed his fingers and aggressively kissed her on the mouth.

Mrza unbuttoned his pants and "pulled out his penis." Mrza grabbed the back of N.W.'s head, pulled it down to his penis,

and inserted his penis in her mouth. He forced her head up and down on his penis. N.W. turned her head and told him, "'Stop. I don't want to do this.'" N.W. pulled her head away.

Mrza tried to digitally penetrate N.W.'s vagina again, but she stopped him. He then pulled her pants down to her mid-thigh and attempted to perform oral sex on her. She remembered telling him multiple times to stop and that she did not want to do this.

N.W. attempted to open the vehicle door, and Mrza grabbed her shoulder, pulled her into the car, and shut and locked the doors. N.W. recalled that Mrza told her to get in the back seat and that "he wanted to fuck me." She unlocked the door and ran to her car.

A few hours later, N.W. met a friend to tell him about the incident and he called the police. A police officer responded to the call and briefly interviewed N.W. before advising her to go to the hospital for an examination. N.W. went to a hospital with her mother for a sexual assault nurse examination. At the hospital, N.W. gave a detailed statement of the events to the examining nurse and a police sergeant. These statements are nearly identical to the events to which she testified to at trial.

(b) Standard of Review

[21] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[49]

---

[49] *Smith, supra* note 5.

### (c) Analysis

Mrza argues that although Neb. Rev. Stat. § 29-2028 (Reissue 2016) states, "The testimony of a person who is a victim of a sexual assault . . . shall not require corroboration," in this case, the victim's statement lacked corroboration and therefore was insufficient to find Mrza guilty. Mrza contends that N.W.'s inconsistent statements to the police officer, the nurse, and the police sergeant about when she did and did not consent made her testimony not credible and did not provide sufficient evidence for the jury to find Mrza guilty beyond a reasonable doubt.

[22] The State was not required to corroborate N.W.'s testimony. Since 1989, the State has not been required to corroborate a victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient.[50] Therefore, if the jury believed N.W., her testimony alone was sufficient. After viewing the facts in the light most favorable to the prosecution and without passing on the credibility of witnesses, there was sufficient evidence for any rational trier of fact to find Mrza guilty beyond a reasonable doubt.

### 4. EXCESSIVE SENTENCE

Mrza argues that the district court imposed an excessive sentence.

### (a) Standard of Review

[23] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[51]

### (b) Analysis

Mrza argues that the district court abused its discretion by imposing an excessive sentence of 8 to 15 years' imprisonment,

---

[50] See *State v. Davis*, 277 Neb. 161, 762 N.W.2d 287 (2009).

[51] *Id.*

rather than a probationary sentence. Mrza contends that his crime did not cause or threaten serious harm, he had no prior criminal or delinquent history, he has a close and positive family support system, and he was engaged in supporting his local ethnic community. He does not dispute that the sentence was within the statutory limits.

We have recited the principles of law governing such claims so many times that we see no point in doing so again here.[52] Simply put, there was no abuse of discretion in the sentence imposed by the district court.

### 5. Remaining Ineffective Assistance of Counsel Claims

We have already disposed of Mrza's assignment of ineffective assistance of trial counsel regarding the Snapchat evidence. Three claims remain: the failure to move for a mistrial during the prosecutor's closing argument and the two claims set forth in the second paragraph of the assignments of error section (the latter of those two having been synthesized in the fourth paragraph of that section). We have already recited the standard of review and basic principles of law applicable to such claims.

We recognize his ineffectiveness assignment regarding the prosecutor's closing argument referred by paragraph number to the assignment of excessive sentence. But Mrza's argument in his brief made clear that he meant to refer to the prosecutorial misconduct assignment, and it is equally clear that the mistaken numerical reference was an inadvertent typographical error.

Mrza asserts that his trial counsel was ineffective when he failed to move for a mistrial following inflammatory statements made by the prosecutor during closing argument. We agree that Mrza has sufficiently described the deficiency in

---

[52] See *id.*

counsel's conduct and that the record does show that no such motion was made.

But this is not one of the rare instances where a reversal on direct appeal is appropriate.[53] Although Mrza has accurately described *what* was not done, the record does not show *why* trial counsel did not move for a mistrial. And we recall that in determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. Because the undisputed facts in the record cannot conclusively determine whether counsel did or did not provide effective assistance and whether Mrza was prejudiced by the alleged deficient performance,[54] the record is not sufficient to address the claim on direct review.

In response to Mrza's remaining claims of ineffective assistance of trial counsel, the State responds that the record is not sufficient to address them. We agree.

## V. CONCLUSION

We conclude that there is no merit to the assignments of error we can reach on direct appeal. Accordingly, we affirm Mrza's conviction and sentence.

AFFIRMED.

---

[53] See, *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013); *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003), *overruled on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[54] See *Smith, supra* note 5.