IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. CLARK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PAUL A. CLARK, APPELLANT.

Filed October 29, 2019.    No. A-18-1040.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

James Martin Davis, of Davis Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Paul A. Clark appeals from his plea-based convictions and sentences for first degree assault and use of a deadly weapon to commit a felony in the district court for Lancaster County. He alleges that his sentences are excessive and that his trial counsel was ineffective. Based on the reasons that follow, we affirm.

## BACKGROUND

Clark was charged by information with second degree murder, kidnapping, first degree assault, second degree assault, and two counts of use of a firearm to commit a felony. Pursuant to a plea agreement, Clark pled no contest to two charges in an amended information: first degree assault and use of a deadly weapon to commit a felony. Clark also agreed to cooperate with the

- 1 -

State in its investigation and prosecution of other individuals involved in the case. The State agreed to dismiss charges against Clark in another case.

At the plea hearing, the State provided the following factual basis for the charges:

On July 10th of 2017, Lincoln police officers were in contact with Antonio Madlock, who reported that his brother Phillip Madlock was missing. . . .

. . . .

Through the course of the investigation a number of people provided information regarding the case. Tim Montgomery advised Lincoln police department investigators that Phillip Madlock had contacted him, asking for some help in finding marijuana. Montgomery made some calls, eventually contacting Paul Clark to see if he had any marijuana available. Paul Clark indicated he could help out Montgomery with some weed.

On June 28th, 2017 Phillip Madlock came to Montgomery's home at 134 Irving in Lincoln, Lancaster County, Nebraska, so that he could get the marijuana. Paul Clark arrived there along with Dominic Aguirre, whom Mr. Montgomery did not know and had not invited over.

When Mr. Montgomery started to introduce Paul Clark to Phillip Madlock, Paul Clark immediately began confronting Madlock about money he said Phillip Madlock owed to him.

Montgomery said that Paul Clark continued to ask Madlock, "Where's my money," and the two engaged in a heated argument. Soon Dominic Aguirre joined in, arguing about money that Madlock owed to him and Mr. Clark.

According to Montgomery the arguing became more intense between Madlock, Clark and Aguirre until Dominic Aguirre punched Phillip Madlock in the face with his fist, busting Madlock's lip open.

Aguirre then began punching Madlock several times until Tim Montgomery pushed him away and into the kitchen furniture. Dominic Aguirre then produced a handgun and threatened Montgomery for interfering. Tim Montgomery jumped behind Paul Clark and implored him to stop Dominic Aguirre and for them both to leave his home.

Phillip Madlock joined in, begging Clark to stop Aguirre and to leave the house. Instead Paul Clark continued to demand Phillip Madlock give them their money.

Dominic Aguirre also continued to demand money from Phillip Madlock and then hit Madlock in the head with the handgun, opening a cut over Phillip Madlock's eye and sending him off-balance. Mr. Aguirre continued to hit Madlock with the handgun. He began bleeding even more profusely.

At this point Tim Montgomery noticed Paul Clark also had a handgun. Paul Clark also punched Phillip Madlock, knocking him against Montgomery, who continued to ask Paul Clark to take Dominic Aguirre and leave his home.

Paul Clark responded they were not going anywhere until they got their money. Tim Montgomery continued to ask Clark and Aguirre to leave, concerned that his children and wife were coming home.

Phillip Madlock moved into the attached garage followed by Aguirre, who again struck Madlock with the gun, knocking him to the ground. Montgomery believed Phillip Madlock was suffering injuries so severe that he needed to be transported to the hospital.

Montgomery continued to ask Paul Clark to leave with Aguirre, complaining about the blood and disruption to his house. Paul Clark indicated he would get it cleaned up. He talked on the phone, after which Merrie Whitaker and Anthony Brock arrived.

Merrie Whitaker told investigators that she arrived at 134 Irving on June 28th after being called by Paul Clark, who said he had a house he wanted her to clean. Ms. Whitaker said she had done cleaning jobs on other houses that Paul Clark had remodeled and sold.

So she went to the Irving address, expecting the same type of situation. When she arrived she saw Dominic Aguirre outside the residence. She went inside where from the kitchen she saw a man lying on his back on the floor of the garage, moaning. She also overheard Paul Clark talking with another male who was telling Clark, "I think you broke his jaw."

Anthony Brock stated that he received a Snapchat of a man getting beat up. After receiving a similar Snapchat in which he recognized Dominic Aguirre, Brock received directions to the Irving Street address.

When he arrived, he saw a bloody Phillip Madlock lying on the floor of the garage on a sheet, mumbling incoherently.

Anthony Brock said it was apparent that Phillip Madlock needed serious medical attention. Instead Brock said Phillip Madlock was carried out of the garage and placed into the back seat of Madlock's Chevy Avalanche.

Dominic Aguirre drove away in the Avalanche, followed by Paul Clark driving his vehicle, and Brock followed Clark. The three stopped at a business off Cornhusker Highway in Lincoln. Clark and Brock went into the business, and when they came back out, Mr. Brock saw Madlock's Avalanche moving back and forth. Brock approached the driver's side and Dominic Aguirre told him he had to choke out Madlock.

When it was discovered that Phillip Madlock was dead, the body was transported outside Lancaster County, where it was disposed of.

All this occurring in Lancaster County, except for the disposal, Nebraska.

Also at the plea hearing, the court explained to Clark the charges against him, the possible penalties, and the rights he was giving up by entering no contest pleas. The court subsequently found that Clark understood his rights, and freely, voluntarily, intelligently, and knowingly waived them; that he understood the charges and the possible penalties and the consequences of his pleas; that he was entering his pleas freely, voluntarily, intelligently, and knowingly; and that there was a sufficient factual basis to support the pleas. The court accepted Clark's pleas of no contest to the charges and found him guilty.

A sentencing hearing followed, at which time the court sentenced Clark to a term of 40 to 50 years' imprisonment on the first degree assault charge and a term of 20 to 30 years' imprisonment on the use of a deadly weapon to commit a felony charge, to run consecutive to the sentence for first degree assault.

ASSIGNMENTS OF ERROR

Clark assigns that the sentences imposed by the trial court were excessive. He also assigns that

[t]he record on this appeal supports some of [his] claims that he was denied effective assistance of counsel, however, it is insufficient to support all of [his] claims in this regard. Therefore, a further evidentiary hearing is necessary to present the evidence necessary to support his entire claim that his trial counsel's representation was deficient.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

*Excessive Sentence.*

Clark assigns that the trial court imposed excessive sentences. Clark was convicted of first degree assault and use of a deadly weapon to commit a felony, both Class II felonies. Neb. Rev. Stat. §§ 28-308 and 28-1205(1)(b) (Reissue 2016). A Class II felony is punishable by a maximum sentence of 50 years' imprisonment and a minimum sentence of 1 year's imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Clark was sentenced to 40 to 50 years' imprisonment for first degree assault and 20 to 30 years' imprisonment for use of a deadly weapon to commit a felony. Both sentences are within the statutory limits. Therefore, the sentences will not be disturbed absent an abuse of discretion. See *State v. Blaha, supra.*

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Clark argues that because he did not have an extensive criminal history and no prior felony convictions, the court should have sentenced him to minimal terms of incarceration followed by an extended term of probation.

At sentencing, the trial court stated that it reviewed the information in the presentence investigation and considered the appropriate factors in reaching its conclusion, including Clark's criminal history. The court also specifically noted that the incident leading to the charges was "extraordinarily brutal" and that it considered the presence of such violence a big factor in its sentencing determination.

Based on the record before us, there is no indication that the trial court considered any inappropriate or improper factors in determining Clark's sentences. As a result, the sentences imposed do not constitute an abuse of discretion.

*Ineffective Assistance of Counsel.*

Clark next assigns that

[t]he record on this appeal supports some of [his] claims that he was denied effective assistance of counsel, however, it is insufficient to support all of [his] claims in this regard. Therefore, a further evidentiary hearing is necessary to present the evidence necessary to support his entire claim that his trial counsel's representation was deficient.

In the "summary of argument" section of Clark's brief, he sets out six allegations of ineffective assistance of counsel, the sixth allegation containing eight subparts. He then argues that the record is insufficient to address his ineffective assistance of counsel claims.

Clark argues, but does not assign as error, that his trial counsel was ineffective. He does not assign any specific allegations of ineffective assistance of counsel, nor does he generally assign that his trial counsel was ineffective. His assignment of error only alleges that the record is insufficient to address ineffective assistance of counsel claims. Clark was required to specifically assign and argue his trial counsel's allegedly deficient conduct. See *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). This arises from a fundamental rule of appellate practice. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Id.* A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Id.* Accordingly, we do not consider Clark's claims of ineffective assistance of counsel as set out in the summary of argument section of his brief, as they were not assigned as error.

We also note, for the sake of completeness, that the Nebraska Supreme Court has held that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance and that an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Clark's assignment of error clearly does not conform to this rule, but his appellate brief was filed prior to the holding in *Mrza.*

## CONCLUSION

We find that the trial court did not abuse its discretion when sentencing Clark, and we further find that any ineffective assistance of counsel claims were not properly preserved for our review. Accordingly, Clark's convictions and sentences are affirmed.

AFFIRMED.