IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DAVIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL D. DAVIS, APPELLANT.

Filed March 8, 2022.    No. A-21-619.

Appeal from the District Court for Saline County: VICKY L. JOHNSON, Judge. Affirmed.

Justin Kuntz and Matthew Hanson, of Hanson, Hroch & Kuntz, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Following his pleas of guilty, Michael D. Davis was convicted of three counts of child abuse and one count of first degree arson. He was sentenced to concurrent terms of incarceration of 3 years for each child abuse charge and 20 to 20 years for the arson charge. Although Davis failed to assign errors in his brief on appeal, he argues that his trial counsel provided ineffective assistance in several regards and that the sentences imposed were excessive. We affirm.

## STATEMENT OF FACTS

Davis was originally charged with three counts of child abuse, first degree arson, possession of a controlled substance, four counts of terroristic threats, third degree domestic assault, and being a habitual criminal. Subsequently, Davis entered into a written plea agreement in which he agreed to plead guilty to three counts of child abuse and one count of first degree arson.

On May 5, 2021, a competency and plea hearing was held before the district court. The court reviewed the evidence offered during the competency portion of the hearing and found Davis competent. After a brief off-the-record discussion between Davis and his attorney and a short recess, during which the plea agreement was reduced to writing, the proceedings continued with the plea portion of the hearing.

During the plea hearing, the district court advised Davis of the rights that he would be waiving by entering the pleas and of the possible penalties; Davis indicated his understanding of the rights that he would be waiving and of the possible penalties. Davis denied that he had been promised anything in order to plead or was threatened in any way. The State provided a factual basis indicating that on November 22, 2020, deputies with the Saline County sheriff's office were dispatched to Davis' residence after his wife sent a text message to a friend, stating that Davis was threating to kill her. Upon arriving at the residence, deputies attempted to make contact by knocking, but no one answered the door. Deputies could hear voices, including children's voices, coming from inside the residence. Deputies announced their presence and asked Davis to come to the back door, but Davis began yelling, stating that he would not leave and would shoot himself if deputies tried to enter. Davis' wife was able to leave through the front door, but three children, ages 4 and under, remained inside. Davis began yelling at the deputies from the front door of the residence. During negotiations with the deputies, Davis refused to leave or let the children out of the residence, threatened to shoot himself, stated that he had a knife, and at one point, stated that he would have one of the children pull the trigger on the gun to shoot Davis. At some point, Davis also stated that he was going to burn down the house. Deputies then observed a fire in the front part of the house, and upon entering through the back door, they immediately encountered a lot of smoke. The deputies successfully rescued the children but were unable to locate Davis. Davis then called dispatch to tell them he was attempting to leave through a window because of the smoke. Davis stuck half of his body through a window, while holding a knife to his neck, yelling, and again refusing to leave. After the deputies deployed a Taser, Davis was removed from the window. Eventually, law enforcement determined that there was no gun in the residence, but that Davis had physically assaulted his wife.

The district court accepted Davis' guilty pleas, found a sufficient factual basis, and found Davis guilty of the counts to which he had pled. The court overruled Davis' request to waive a presentence investigation report (PSR) and sentence him that day. The court ordered a PSR and scheduled sentencing for a later date. When the court told Davis that the probation office would be contacting him for the PSR, Davis informed the court that he did not want to do a PSR and would refuse to cooperate. We note that the PSR does reflect participation by Davis.

A sentencing hearing was held on July 7, 2021. During his statement to the district court, Davis' attorney brought to the court's attention certain corrections that Davis felt needed to be made to the PSR. Davis' attorney also informed the court that Davis felt bad about having placed his children in danger. Davis' attorney noted the length of time Davis had been in foster care as a juvenile, as well as Davis' ongoing mental health and drug use issues as an adult. He asked the court to place Davis on probation so that Davis could obtain mental health and drug treatment. In its comments to the court, the State referenced the competency evaluation that had been completed and argued that Davis' issues were more drug related than mental health related. The State also noted that testing conducted during the PSR placed Davis in the maximum risk range for violence

and that Davis had been assessed as a very high risk to reoffend. The State argued that Davis was not a fit candidate for probation and asked the court to impose a sentence of incarceration. Finally, Davis made a statement to the court, expressing sorrow and remorse for his actions, highlighting his difficult childhood, acknowledging that he has "a problem with drugs and alcohol," and asking the court to "consider [him] going to treatment and bettering [himself] for [his] kids . . . so [he] can become a better father to them."

In its comments before sentencing Davis, the district court noted Davis' difficult childhood, the circumstances of the present case and subsequent effects on Davis' young children, and Davis' prior criminal history, including his poor history of compliance with court orders, among other factors reflected in the PSR. The court described this as "a really bad" case and found that Davis was not a fit candidate for probation. The court sentenced Davis to 3 years' imprisonment for each child abuse conviction and to 20 to 20 years' imprisonment for the arson conviction, all sentences to run concurrently. The court granted Davis credit for 228 days' time served.

## ASSIGNMENTS OF ERROR

Davis did not include an assignments of error section in his brief as required by Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2021). An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). The argument section of Davis' brief does contain various headings purporting to assign error; however, where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error. *In re Interest of Mekhi S.*, 309 Neb. 529, 960 N.W.2d 732 (2021) (emphasizing that such headings do not satisfy requirements of appellate rules). We also note that the table of contents in Davis' brief contains sentences under the heading for "Argument" stating that his trial counsel was ineffective in various regards and that the district court abused its discretion in sentencing him. However, the Nebraska Supreme Court has declined to treat headings within the table of contents of an appellant's brief any differently than headings within the argument section of a brief. See *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018).

## STANDARD OF REVIEW

Consideration of plain error occurs at the discretion of an appellate court. *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

## ANALYSIS

*Ineffective Assistance of Counsel.*

In this case, we must consider the effect of Davis' failure to specifically assign error in light of the Nebraska Supreme Court's declaration in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019) that assignments of error on direct appeal regarding ineffective assistance of trial counsel

must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. In his reply brief, Davis asserts that he "[r]estates and reasserts Assignment of Errors I, II, III, and IV as clearly numbered and paragraphed in Appellant's Brief." Reply brief for appellant at 1. This assertion is inadequate to cure Davis' failure to assign error in his initial brief and also fails to satisfy the requirements of *Mrza* that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance.

The Nebraska Supreme Court addressed a similar situation in *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020). In that case, the appellant made a general assignment of error with respect to ineffective assistance of counsel that did not comply with the requirements of *State v. Mrza, supra*. In his reply brief, the appellant included a section entitled "Restatement of Assignments of Error," in which he reframed his ineffective assistance of counsel errors to include specific alleged instances of deficient performance and argued that by doing so, he had cured any failure to comply with *Mrza*. He also argued that even if his initial brief did not comply with *Mrza*, the relevant instances of deficient performance could be discerned from the argument section of his brief. The Supreme Court rejected both of these arguments.

First, the Nebraska Supreme Court stated that "an appellant cannot cure a failure to adequately assign error via a reply brief," noting that the purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *State v. Archie*, 305 Neb. at 841, 943 N.W.2d at 257. The *Archie* court stated further:

> The ineffective assistance assignment of error in [the appellant's] initial brief did not comply with *Mrza*. Allowing [the appellant] to raise a *Mrza*-compliant ineffective assistance assignment of error in his reply brief would not be meaningfully different than allowing him to assert a brand new assignment of error in a reply brief. We also disagree with [his] assertion that the only rationale for the *Mrza* requirement is to relieve appellate courts from having to scour the argument section of a brief to identify the specific allegations of deficient performance and that his '[r]estatement' of his assignments of error eliminates that concern. Another obvious benefit of the *Mrza* requirement is that, if followed, the specifically alleged deficient performance will be clearly identified so that the appellee can respond in its brief on appeal. A late attempt to comply with *Mrza* does not afford the appellee the same opportunity.

*State v. Archie*, 305 Neb. at 841-42, 943 N.W.2d at 257.

Finally, the *Archie* court declined to discern the specific alleged instances of deficient performance from the argument section of the appellant's initial brief. In declining to do so, the Supreme Court again noted its statement in *Mrza* that it would decline in future cases to synthesize a specific assignment of error from the argument section of an appellant's brief.

In the present case, Davis has failed to properly assign error. His attempt in his reply brief to cure that failure by restating the argument headings from his initial brief as his assignments of error fails. As noted above, the purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. See *State v. Archie, supra*. See, also, *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d

- 4 -

460 (2019) (errors not assigned in appellant's initial brief are waived and may not be asserted for first time in reply brief).

Further, Davis did not set forth in his initial brief on direct appeal assignments of error regarding ineffective assistance of trial counsel in which he specifically alleged deficient performance as required by *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). We decline to attempt to discern any specific alleged instances of deficient performance from the argument section of his initial brief or to address his arguments with respect to ineffective assistance of counsel further.

*Excessive Sentences.*

The district court sentenced Davis to terms of imprisonment of 3 years on each of the three counts of child abuse, all Class IIIA felonies, and to a term of imprisonment of 20 to 20 years on the count of first degree arson, a Class II felony. See, Neb. Rev. Stat. § 28-707(1) (Cum. Supp. 2020); Neb. Rev. Stat. § 28-502 (Reissue 2016). The court ordered that Davis' sentences were to be served concurrently. All of the sentences are within the statutory limits. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). See, also, Neb. Rev. Stat. § 28-2204.02(4) (Reissue 2016); § 28-105(6) (where person sentenced to imprisonment for Class II felony is also sentenced concurrently to imprisonment for Class IIIA, person is not subject to post-release supervision).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Davis argues that the district court failed to consider certain relevant factors in sentencing him and "used hearsay/third party information to the detriment of [Davis] when announcing his sentence." Brief for appellant at 18. He notes other information from the PSR referenced by the court in its comments and argues that the court "inferred several factual scenarios to [Davis'] detriment at a point in the proceeding when [Davis] had no opportunity to rebut those inferences." Brief for appellant at 19. He argues that the PSR contained other more favorable factors, which would have warranted, at a minimum, a shorter term of imprisonment. The sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *State v. Nollett*, 29 Neb. App. 282, 953 N.W.2d 57 (2020).

We find no plain error in the factors considered by the district court in sentencing Davis or in the sentences imposed. Accordingly, we affirm Davis' convictions and sentences.

## CONCLUSION

We find no plain error in Davis' convictions and sentences, and we do not consider his ineffective assistance of counsel claims. Therefore, we affirm.

AFFIRMED.