IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ISIDORO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOSE ISIDORO, APPELLANT.

Filed January 28, 2020.    No. A-19-338.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Allyson A. Mendoza for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

INTRODUCTION

Following a bench trial, the district court for Douglas County found Jose Isidoro guilty of first degree sexual assault of a child. On appeal, Isidoro argues that there was insufficient evidence to support his conviction and that his trial counsel was ineffective. For the reasons that follow, we affirm.

BACKGROUND

Isidoro was charged by information with first degree sexual assault of a child under Neb. Rev. Stat. § 28-319.01(1)(a) and (2) (Reissue 2016), which make it a Class IB felony for an individual at least 19 years of age or older to subject another person under 12 years of age to sexual penetration. The charge was based on a criminal complaint alleging that Isidoro subjected J.B., the minor child of Isidoro's ex-girlfriend, to sexual penetration in May 2018.

- 1 -

On November 15, 2018, Isidoro waived his right to a jury trial and the matter was scheduled for a bench trial. A bench trial took place on January 25 and 29, 2019. On the first day of trial, the State filed an amended information expanding the timeframe the events giving rise to the charge were alleged to occur to February 7, 2015, through May 6, 2018.

At trial, J.B., the alleged victim in this case, testified that she is 10 years old and lives with her mother, Hollie. She testified that Isidoro is her mother's ex-boyfriend and that she calls him "Chino." J.B. testified that Isidoro has a son younger than her, J.J., who she referred to as her brother. She testified that previously her mother and Isidoro appeared to get along, and she thought of Isidoro as a father.

After her mother and Isidoro ended their relationship, J.B. would continue to visit him nearly every weekend at his apartment in Omaha, Nebraska. She testified that Isidoro lived with another man and the man's son. She testified that she would often spend the night at Isidoro's apartment, but the sleeping arrangements would vary. Oftentimes, J.B. would sleep in the same bed as J.J. and Isidoro, and she would sleep in between the two.

J.B. testified that beginning when she was 7 years old, she often became uncomfortable with events that happened when she visited Isidoro. She testified that on one occasion, after she, J.J., and Isidoro returned from dinner and were lying in bed, Isidoro "touched [her] where people aren't supposed to touch." She was unable to name the specific body part Isidoro touched, but indicated that he touched her with his fingers. When asked to circle the area Isidoro touched on a stick figure diagram, J.B. circled the area unmistakably representative of her vaginal area.

She explained that at the time, she was lying down in bed, on her left side, watching television. She testified that Isidoro was lying behind her and reached his arm over her to touch her. She testified that Isidoro touched her underneath her shorts and underwear. J.B. testified that Isidoro did not say anything when he touched her, and she was unable to state how long the incident lasted. She indicated that he touched both the outside and inside of her body. J.B. testified that she did not tell anyone after the incident occurred.

J.B. testified that this type of incident began when she was 7 years old and continued on more than one occasion at the same apartment. She admitted that she did not tell anyone about it because she was afraid people would think it was her fault. J.B. testified that she did not tell her mother because she thought her mother would not believe her because she had a "good connection" with Isidoro.

J.B. testified regarding another similar incident that occurred over Cinco de Mayo weekend in 2018. She testified that she thought she remembered spending that Friday with Isidoro and J.J. and attending a parade. She recalled spending one night of the weekend at Isidoro's apartment, and one night with Stephanie, J.J.'s mother. J.B. testified that she, J.J., and Isidoro all slept in the same bed the night she stayed with Isidoro. She indicated that she slept on her side, with J.J. in front of her, and Isidoro behind her. She testified that she was facing the television and the back of J.J.'s head.

J.B. testified that Isidoro again touched her "where people are not supposed to touch." She testified that Isidoro reached over her side and touched her underneath her clothing. J.B. again was asked to circle on a stick figure diagram where Isidoro had touched her that evening, and indicated the area representative of her vaginal region. She testified that Isidoro would touch her at different

times, sometimes on the outside of her body, and sometimes inside. She indicated that she knew Isidoro's fingers were inside of her body because it hurt her.

J.B. testified that J.J. was asleep during the incident, and that she did not try to wake him. J.B. noted that she did not tell anyone about what had happened after this particular incident. She testified that the next day she went to the parade and was supposed to return to Isidoro's apartment that night, but did not because he had been drinking at the parade. Instead, she went home with Stephanie for the evening. J.B. was unable to recall how many times Isidoro had touched her inappropriately, but indicated that she could not recall a time that she slept over at his apartment, since she was 7 years old, when he did not touch her.

J.B. testified that the first person she told about Isidoro inappropriately touching her was her older brother, Albert. J.B. was 10 years old and visiting her father in Red Oak, Iowa, when she first told Albert about what had happened. J.B. indicated that she had gotten in trouble for a picture her younger sister had taken with J.B.'s phone, which her father and his girlfriend believed she had taken. When asked whether something was going on with her, J.B. testified that she originally responded "no" but felt bad for lying and ultimately told her brother about Isidoro.

J.B. was unable to recall exactly what she told Albert, but remembered that he appeared upset. After she told Albert what had happened, Albert called their father to come downstairs and J.B. told him about Isidoro as well. J.B.'s father then called her mother and she and J.B. first talked on the phone and later in person. J.B. testified that she did not provide specific details at the time, because she felt uncomfortable discussing it, but generally said that Isidoro had been "touching the place you're not supposed to touch." After returning to her mother's house, J.B. told her mother more details about where and how Isidoro had touched her. J.B. denied that her mother had told her to make up the accusations against Isidoro and testified that she would not lie about such.

After J.B.'s direct examination, the parties stipulated to the admission of videos of J.B. and Isidoro's previously-recorded interviews.

On cross-examination, J.B. testified that she was unsure if the apartment Isidoro lived at with another man and the man's son was in Iowa or Nebraska. J.B. did not recall telling the Project Harmony interviewer that during the first incident with Isidoro, he had asked her to take her clothes off and held her "aggressively" but did not touch her on the inside of her body. J.B. explained that she may have confused her dates, but that J.J. was not present during the first incident when Isidoro told her to take her clothes off, but had been present when Isidoro touched her underneath her clothing.

J.B. was unable to state whether Cinco de Mayo fell on a Friday or Saturday the previous year. J.B. testified that Isidoro touched her inappropriately over that particular weekend "once or twice" on different days. She did not recall telling the Project Harmony interviewer that she took a shower Friday evening because it was hot outside and she had gotten sweaty from the Cinco De Mayo parade and festivities. J.B. acknowledged that Isidoro could not have touched her inappropriately on Saturday that weekend because she had gone to stay with Stephanie. She did not recall previously telling anyone that Isidoro had touched her that weekend after the parade while J.J. was taking a shower.

J.B. testified that she did not object to visiting Isidoro, despite the inappropriate touching, because she did not want her mother to get upset and worried. She did not recall telling the Project Harmony interviewer that it did not hurt when Isidoro touched her.

J.B. did not recall previously stating that there was a period of a year where she did not visit Isidoro, but recalled a period of several weekends where she did not see him. J.B. admitted that family members had previously told her that she should tell someone if someone touched her inappropriately, but she did not do so after Isidoro began touching her.

On redirect examination, J.B. testified that she could not recall the specific order of events due to the number of times Isidoro touched her and because it began 3 years before trial. J.B. testified that she first did not tell anyone because she trusted Isidoro and "thought he was a nice guy." She testified that she did not want to make her mother upset or "ruin the relationship" between her mother and Isidoro.

After the testimony of J.B., the video of her Project Harmony interview, taken on June 22, 2018, was played for the court.

J.B.'s mother, Hollie, was called on behalf of the State and testified that J.B. was born in February 2008, making her 10 years old at the time of trial. Hollie testified that she and Isidoro dated "off and on" for a period of 4 years or so, beginning in 2009 or 2010. She testified that Isidoro was "like the role of a stepfather" to J.B. and the two had the opportunity to see each other after her relationship with Isidoro ended.

Hollie testified that at one point, Isidoro lived with a man and the man's son in an apartment in Omaha near the intersection of 50th and Grover Streets. She testified that Isidoro later lived in a home in south Omaha near 26th and Spring Streets. Hollie testified that she believed Isidoro was approximately 46 years old and, when prompted, stated that June 1969 sounded familiar as the date of Isidoro's birth.

Hollie testified that she first became aware of the allegations that Isidoro had inappropriately touched her daughter when J.B.'s father called her and informed her. Hollie testified that she would not have told J.B. to make up the allegations against Isidoro because she previously had not had any problems with him. Hollie testified that after she was informed of the situation by J.B.'s father, she contacted the police.

On cross-examination, Hollie admitted that she had previously committed several crimes involving dishonesty. She testified that she was hesitant to ask about details regarding what happened to J.B. because J.B. was 10 years old and Hollie had "no clue how to even question a child."

Hollie testified that she had suspicions that Isidoro had sexually abused other children based on what her sister, Jolene, had told her. Hollie testified that Jolene works as a counselor, but was unable to testify how Jolene came across the information related to allegations that Isidoro had sexually abused other children.

Hollie testified that she did not feel compelled to warn J.J.'s mother about the allegations against Isidoro, despite the fact J.J. often stayed with Isidoro, because "nothing was on [her] mind except [her] daughter." Hollie refused to answer questions regarding whether she was facing pending child abuse charges at the time of trial. She acknowledged that despite the fact he is not J.B.'s biological father, Isidoro had acted as a father figure in J.B.'s life.

On redirect examination, Hollie admitted that she had a pending charge against her, but testified the charge was completely unrelated to J.B. and Isidoro. Hollie clarified that she did not learn about the other allegations of abuse against Isidoro until after he had already been arrested.

J.J.'s mother, Stephanie, testified that Isidoro is the biological father of J.J. She testified that despite her relationship with Isidoro ending around 2013, the two remained friends. Stephanie testified that Isidoro previously lived at a house on Spring Street in south Omaha up until the date he was arrested. She testified that Isidoro lived there with his two sisters, Reyna and Maria, and Maria's two children.

Stephanie testified Isidoro had represented to her that he was the biological father of J.B. and he had indicated that there had been a paternity test done. She testified that J.B. would often spend the weekend with Isidoro at the same time their son was visiting him. She testified that before he lived with his sisters, Isidoro lived near 50th and Grover Streets in Omaha with another man. Stephanie testified that J.J. informed her that when he spent the night at Isidoro's, he would "cuddle[] with dad" on a bed. Stephanie described J.B. as "[v]ery quiet. Shy almost." She testified that she never personally observed any disciplinary issues with J.B.

Stephanie testified that over the Cinco de Mayo weekend in 2018, J.J. was to spend the weekend with Isidoro at his house on Spring Street in Omaha. She was informed by Isidoro that J.B. would be staying the weekend as well. Stephanie testified that she ran into Isidoro and the children that Saturday at a Cinco de Mayo celebration and was concerned that Isidoro was "a little drunk." In response, Stephanie decided to take the children with her that night instead of having them return with Isidoro.

On cross-examination, Stephanie testified that after she took the children home on that Saturday, Isidoro did not see them again until Sunday. She acknowledged that Isidoro often roamed around, living with different people, and never really had actual possession of his own residence.

Isidoro and Stephanie's minor son, J.J., referred to J.B. as his "big sister." J.J. testified that over the Cinco de Mayo weekend in 2018, he spent one night with Isidoro and one night with his mother, Stephanie, and that J.B. was present both nights. J.J. testified that he slept on the right side of the bed at Isidoro's house, in front of the television. J.J. thought he remembered Isidoro sleeping in the middle between him and J.B., but could not say for certain. He recalled that when J.B. slept between him and Isidoro, he would often sleep on the left side of the bed, behind J.B.

J.J. recalled answering questions during an interview at Project Harmony. J.J. did not recall telling the interviewer that J.B. had slept in the middle between him and Isidoro the weekend of Cinco de Mayo.

On cross-examination, J.J. was unable to recall the specific day of the week he stayed with Isidoro over Cinco de Mayo weekend, or what they did when he got there, but recalled taking a shower that evening. He testified that he, J.B., and Isidoro all left the house together that Friday evening after he and J.B. had taken showers. J.J. testified that the next day, they walked to the Cinco de Mayo celebration, watched the parade, and he and J.B. ultimately went home with J.J.'s mother, Stephanie, that night.

J.B.'s older brother, Albert, testified that he and J.B. share the same parents. He testified that his relationship with J.B. is "amazing." He testified that after Hollie and Isidoro ended their

relationship, the two managed to "get along very well." He testified that both he and Hollie always trusted Isidoro, even after the relationship ended.

Albert recalled seeing J.B. the weekend after Cinco de Mayo when she came to visit their father, who Albert had been living with at the time. Albert recalled that on that particular visit, he found some pictures of J.B. "trying to be cute" on her cellphone, and that he had a conversation with her regarding safe use of the phone. Soon after that conversation, J.B. came downstairs to where Albert was and she was crying. It was soon afterward that J.B. made a disclosure to Albert regarding Isidoro.

In response to what J.B. told him, Albert informed their father, who in turn called Hollie regarding the situation. Later on, Albert was with Hollie and the two further discussed the situation with his and J.B.'s father over the phone. Soon after, Hollie contacted the police.

The State also presented as part of its case in chief a previously-recorded video interview of Isidoro. At that point, the State rested. After the State concluded its presentation of evidence, the defense moved for a directed verdict based on lack of evidence and lack of jurisdiction. That motion was overruled by the court.

During Isidoro's case in chief, the defense introduced exhibit 6, a calendar for the month of May 2018. After the court sustained the defense's previous hearsay objection, which the State proceeded on under an offer of proof, the defense rested.

After closing arguments by both parties, the district court took the matter under advisement to review the video evidence containing both J.B. and Isidoro's previous interviews.

On February 7, 2019, after reviewing all of the evidence, the district court found Isidoro guilty of the charge of sexual assault of a child in the first degree. The court ordered a presentence investigation and set the matter for sentencing. On March 25, 2019, the district court sentenced Isidoro to imprisonment of 15 years to 15 years and 2 days. This appeal followed.

ASSIGNMENTS OF ERROR

Isidoro assigns, restated, that (1) the district court erred in finding him guilty because the evidence presented was such that no rational trier of fact could have found him guilty and (2) trial counsel was deficient and, but for the deficient performance, the result of the proceeding would have been different.

STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether

the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

ANALYSIS

Isidoro claims that his conviction for first degree sexual assault of a child should be reversed and his sentence vacated, because no rational finder of fact could have found that the State met its burden beyond a reasonable doubt. Alternatively, Isidoro argues that his conviction should be reversed and sentence vacated, based on his trial counsel's ineffective assistance. For the following reasons, we find that Isidoro's arguments fail, and we affirm his conviction and sentence.

SUFFICIENCY OF EVIDENCE

The State charged Isidoro with first degree sexual assault of a child. Under § 28-319.01(1)(a), an individual commits the crime of first degree sexual assault of a child when "he or she subjects another person under twelve years of age to sexual penetration and the actor is at least nineteen years of age or older[.]" Under Neb. Rev. Stat. § 28-318(6) (Reissue 2016), "sexual penetration" means:

[S]exual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical, nonhealth, or nonlaw enforcement purposes. Sexual penetration shall not require emission of semen.

As such, the State was required to prove beyond a reasonable doubt that (1) Isidoro subjected J.B. to sexual penetration; (2) he did so on, about, or between February 7, 2015, and May 6, 2018, in Douglas County, Nebraska; (3) at the time Isidoro did so, J.B. was under 12 years of age; and (4) Isidoro was at least 19 years of age or older.

When a challenge to the sufficiency of the evidence supporting a conviction is made, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. McCurdy*, 301 Neb. 343, 351, 918 N.W.2d 292, 298 (2018). Importantly, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Mora, supra*. In his appellate brief, Isidoro essentially asks us to do just that. Isidoro argues that the State "presented contradictory evidence at trial that was insufficient to prove [he] committed the alleged sexual assault." Brief for appellant at 10-11.

Isidoro first takes issue with trial testimony by J.B. that "contradicted" her previous Project Harmony interview. *Id*. at 11. He argues that the State failed to adduce sufficient evidence that he subjected J.B. to "sexual penetration" during a specific incident J.B. described during her Project Harmony interview as occurring in Isidoro's "friend's basement." *Id*. at 10,11. However, the State contends, and we agree, that this is of little consequence. The elements of first degree sexual assault

of a child do not require the State prove "sexual penetration" for every single encounter the victim has with the alleged actor, nor is specific detailed testimony required for every sexual encounter the victim alleges occurred. Rather, the State must simply prove beyond a reasonable doubt that sexual penetration took place at some point, on at least one occasion, within the alleged timeframe. In *State v. Martinez*, 250 Neb. 597, 550 N.W.2d 655 (1996), the Nebraska Supreme Court recognized, albeit in the Sixth Amendment context, the concern with requiring a child victim to present specific details, such as the date, time, and location, of each alleged assault. Doing so "would impose an impossible burden on a child sexual assault victim where there are allegations of multiple assaults over a lengthy timeframe." *Id*. at 599, 550 N.W.2d at 657. While the State may not have provided sufficient evidence to show the essential element of sexual penetration occurred on this particular occasion, it is not fatal to the State's case.

Isidoro next contends that the State failed to prove beyond a reasonable doubt the jurisdiction in which the alleged assault took place. Again, Isidoro focusses on the incident J.B. testified occurred in Isidoro's "friend's basement." However, as the State concedes, this particular incident is not the assault it relies on in proving that sexual penetration occurred. Instead, the State provided substantial evidence related to other alleged assaults that occurred while J.B. was visiting Isidoro overnight across several weekends. While Hollie and Stephanie could not recall the specific address, both testified that they dropped their children off at Isidoro's residence, near Spring Street in south Omaha, to stay with Isidoro over the Cinco de Mayo weekend. Both testified that the residence was in Douglas County in Omaha. Both Hollie and Stephanie also testified that Isidoro previously lived in an apartment near 50th and Grover Streets in Omaha, and that J.J. and J.B. had spent the night with Isidoro there on several occasions. Based on this testimony, taken in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded beyond a reasonable doubt that the alleged assault(s) took place within Douglas County in Omaha. This argument fails.

Isidoro also argues broadly that contradictions in the testimony provided by J.B. and J.J., and other inconsistencies between J.B.'s Project Harmony interview and trial testimony, amount to insufficient evidence to sustain his conviction. Isidoro takes issue with apparent inconsistencies related to the specific date, time, location, and manner of the alleged assault that took place over the Cinco de Mayo weekend in 2018. Isidoro claims that because there was some question as to whether the assault occurred on that Friday or Saturday, where exactly it occurred, and the specific sleeping arrangement of J.J., J.B., and Isidoro that evening, the State failed to meet its burden. We disagree. As previously mentioned, the State is not required to prove every minute detail about the alleged assault beyond a reasonable doubt. Rather, these apparent inconsistencies go toward the weight of the evidence and credibility of the witnesses. This is precisely the type of issue that is left to the finder of fact and will not be reassessed on appeal. An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

J.B. testified at length about the assault that occurred over the Cinco de Mayo weekend. She described the manner in which Isidoro touched her on this occasion and had apparently done so repeatedly throughout the timeframe alleged in the State's information. She specifically testified that Isidoro would touch her both inside and outside of her body, and she indicated on a stick figure

diagram the area unmistakably reflective of her vaginal region. Testimony from other witnesses corroborated the fact that J.B. stayed with Isidoro over Cinco de Mayo weekend. J.J. testified that he, J.B., and Isidoro would often sleep in the same bed while visiting Isidoro. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of first degree sexual assault of a child were proven beyond a reasonable doubt.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Isidoro also attempts to argue that he received ineffective assistance of trial counsel. However, the State argues, and we agree, that Isidoro has not properly presented this claim with sufficient specificity to be considered on appeal. The Supreme Court recently held in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019):

> [W]hen raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. And we have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. It follows that we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance. We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Isidoro, in his brief, generally assigned that "trial counsel provided assistance of counsel so deficient that, but for counsel's deficient performance, the result of the proceeding below would have been different." Brief for appellant at 2. There is nothing in this assignment of error where Isidoro alleges with specificity what *conduct* of trial counsel was deficient. Notably, *State v. Mrza, supra*, was released on April 19, 2019. Isidoro filed his brief on August 22, 2019, 4 months after the Supreme Court released its opinion in *Mrza*. Therefore, we find that Isidoro has not properly assigned his ineffective assistance of trial counsel claim, and we do not consider its merits on this appeal.

## CONCLUSION

We find that there was sufficient evidence presented at trial to support a finding that Isidoro was guilty of first degree sexual assault of a child beyond a reasonable doubt. We also find that Isidoro has not sufficiently assigned as error his claim of ineffective assistance of trial counsel. Accordingly, Isidoro's conviction is affirmed.

AFFIRMED.