IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. COLEMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL COLEMAN, APPELLANT.

Filed August 11, 2020.    No. A-19-890.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

W. Randall Paragas, of Paragas Law Offices, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Following a jury trial, Michael Coleman was convicted of second degree assault, use of a deadly weapon to commit a felony, and possession of a firearm by a prohibited person. He was subsequently sentenced to a term of imprisonment which included a habitual criminal enhancement. Coleman appeals, contending that there was insufficient evidence to support his convictions and that he received ineffective assistance of trial counsel. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

In May 2018, Randy Stella, Jason Cribbs, Melvin McPhaul, and Andrew Ray gathered at a bar in Omaha, Nebraska, to watch the NBA playoffs. Upon arriving at the bar, Stella parked his

- 1 -

car directly in front of the bar's main entrance and went inside to join his friends. A few hours later, upon exiting the bar and getting into his car to leave, Stella heard a very loud bang, lost his vision, his ears began ringing, and he felt blood running down his neck and chest. As his vision returned, he looked around and noticed a dark figure with long hair standing outside his car. The man shot Stella. Stella's injuries consisted of a bullet entrance wound below his right ear and a bullet exit hole in his jaw. A short time later, an ambulance arrived and took Stella to a hospital for treatment. At the emergency room, Stella told law enforcement that the shooter was a black male with dreadlocks and a red shirt.

As a result of these events, and following an investigation, Coleman was charged with first degree assault, a Class II felony; use of a firearm to commit a felony, a Class IC felony; and possession of a deadly weapon by a prohibited person, a Class ID felony. Thereafter, the information was amended to reduce the first degree assault charge to second degree assault, a Class IIA felony, and to add a charge that Coleman was a habitual criminal, with the other charges remaining the same.

## 2. TRIAL

The jury trial was held in May 2019 during which the aforementioned facts were admitted into evidence. The parties stipulated that Coleman had previously been convicted of a felony "prior to May 16, of 2018." Additional testimony was adduced from, among others, Cribbs, McPhaul, Ray, and Rony Lozada.

### (a) Jason Cribbs

Stella left the bar, and 1 to 2 minutes after that McPhaul and Cribbs were also leaving. Cribbs heard a shot and "heard [a] gun drop," then saw a man with long dreadlocks in a dark red or black shirt a few feet away from Stella's car reach down to pick up the gun and then run to a silver truck, which drove off. On cross-examination, Cribbs testified he did not see a gun, but, rather, heard the shot and then "heard the gun drop." Cribbs acknowledged that part of the parking lot was a little dark.

### (b) Melvin McPhaul

McPhaul testified that Stella left the bar, and a few minutes later McPhaul and Cribbs left as well. McPhaul was in the bar's entryway when he heard a gunshot and saw a man with dreadlocks wearing a red shirt and shorts moving toward the car that was straight ahead to the left. McPhaul opined the man looked like he was picking up something as he was moving to McPhaul's left and entered a silver truck, which then left the parking lot. McPhaul noted that man was the only person he saw in the area after hearing the gunshot.

On cross-examination, McPhaul was asked about his deposition testimony in which he stated he saw the suspect wearing a red T-shirt and a blue hat, and McPhaul testified that he recalled saying that during his deposition. On redirect, McPhaul clarified that he saw the suspect wearing a hat when he entered the bar but was not sure if he was wearing the hat outside by the truck.

### (c) Andrew Ray

Ray testified that when he initially entered the bar, a man with dreadlocks and wearing a red T-shirt walked toward him, but Ray did not think anything of it at the time other than just

making a "mental note" that someone was walking towards him. The next time Ray recalled seeing the aforementioned man that night was in the bar's parking lot. Ray explained that he had left the bar approximately 5 to 7 minutes after Stella left and that as Ray was retrieving an item from his trunk, he heard a popping sound and saw a white sedan roll back a little bit. Next, Ray saw the man hunched over, running from the sedan as if "he was trying to conceal something in his waistband" and then enter a silver truck that sped off. Ray testified that after hearing the shot, nothing obstructed Ray's viewpoint between himself and the man, and that the parking lot was lit. As the truck sped off, Ray memorized the truck's license plate number.

Ray testified that the man he described was Coleman and made an in-court identification of Coleman. Additionally, Ray testified no other individuals with dreadlocks were in the bar that evening, and he estimated that approximately 10 minutes elapsed from the time Stella left the bar to the time Ray heard the popping sound.

### (d) Law Enforcement Testimony

Law enforcement determined that the license plate number of the silver truck was registered to Veronica Busch, who informed law enforcement that Coleman was her "on-again, off-again boyfriend" who drove the truck, and that in April 2018, Coleman had been stopped for speeding while driving the truck.

### (e) Rony Lozada

Lozada testified that he was seated in the patio area of the bar when he observed a dark gray truck in the parking lot. Lozada explained that at one point he saw a person exit the bar and walk to a car. At the same time, he also saw a black man with shoulder-length dreadlocks, a red shirt, and dark shorts, possibly gray or black, crouching while approaching the car. Lozada thought the man with dreadlocks was approximately 5′8″ or 5′9″ tall and weighed about 170 or 180 pounds. Then Lozada heard a loud noise and saw the man with dreadlocks running to the gray truck, which quickly sped off. Lozada estimated that less than a minute elapsed from the time he heard the loud noise to the time the truck sped out of the parking lot.

### 3. VERDICT, ENHANCEMENT, AND SENTENCING

The jury found Coleman guilty of all three of the charged offenses. The district court held the enhancement hearing at which the court received certified copies of Coleman's two prior felony convictions in Nebraska, which consisted of possession of a stolen firearm and accessory to a felony, for which Coleman was previously sentenced to prison terms of 1 to 2 years' imprisonment and not less than nor more than 18 years' imprisonment respectively. The district court found that Coleman was a habitual criminal. Thereafter, the court sentenced Coleman to 35 to 40 years' imprisonment for each offense, with each sentence ordered to run consecutively.

### III. ASSIGNMENTS OF ERROR

On appeal, Coleman contends that there was insufficient evidence to support his convictions.

He also assigns as error that his "trial counsel provided assistance of counsel so deficient that, but for counsel's deficient performance, the result of the proceeding below would have been different." Brief for appellant at 3. Assignments of error on direct appeal regarding ineffective

assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). This assigned error is a general allegation and clearly lacks the specificity required by *Mrza.* Accordingly, Coleman has failed to raise an ineffective assistance claim on direct appeal.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## V. ANALYSIS

Coleman first contends the evidence adduced by the State was insufficient to support his convictions of second degree assault, use of a firearm to commit a felony, and possession of a deadly weapon by a prohibited person. In support of this assignment, Coleman argues that although the State attempted to establish that he was the shooter through the eyewitness testimonies of Ray, Stella, Cribbs, McPhaul, and Lozada, there were inconsistencies, or lack of clarity in their versions of events which casted doubt on the veracity or credibility of their testimony.

In order to prove Coleman guilty of second degree assault as charged, the State was required to prove that Coleman had intentionally or knowingly caused bodily injury to another person, i.e. Stella, with a dangerous instrument. See Neb. Rev. Stat. § 28-309(1)(a) (Reissue 2016).

In order to prove Coleman guilty of use of a deadly weapon to commit a felony, the State was required to prove Coleman used a firearm, to commit any felony which may be prosecuted in a court of this state. See Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016).

In order to prove Coleman guilty of possession of a deadly weapon by a prohibited person, the State was required to prove Coleman possessed a firearm and had previously been convicted of a felony. See Neb. Rev. Stat. § 28-1206(1)(a) (Reissue 2016).

The evidence established that Stella was in his car when a gunshot was heard by numerous witnesses who then identified a man fitting Coleman's description standing next to Stella's car. That man then appeared to reach down and grab something, which Cribbs testified he believed to be a gun which he heard strike the ground, followed by the man hurriedly entering a silver truck that quickly sped off. Ray testified that he memorized the license plate number of the silver truck, and when investigated, law enforcement learned Coleman was stopped for speeding in that same truck the month prior to the shooting. Furthermore, Ray provided an in-court identification that Coleman was the man he saw move from Stella's car and enter the silver truck. Although the witnesses ascribed different time periods that passed between Stella leaving the group and the shooting, each of the witnesses' testimonies, except for Stella, were consistent in that they heard a gunshot or a loud noise that caught their attention and saw a man fitting Coleman's description moving away from Stella's car and quickly leaving the area in a truck. While Stella indicated that

after he heard a loud noise he saw a dark figure with long hair outside his car, this description does not contradict the other witnesses' testimonies. Ultimately, Coleman asks this court to pass on the credibility of witnesses and to reweigh the evidence, which is a matter for the finder of fact and not an appellate court. See *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

After reviewing the record, this evidence is sufficient to support the conclusions that (1) Coleman intentionally or knowingly caused bodily injury to Stella with a dangerous instrument, (2) Coleman used a firearm to commit a felony, and (3) Coleman possessed a firearm while shooting Stella and Coleman was previously convicted of a felony "prior to May 16, of 2018."

Viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found the essential elements of second degree assault, use of a firearm to commit a felony, and possession of a deadly weapon by a prohibited person beyond a reasonable doubt. Thus, this assignment of error fails.

## VI. CONCLUSION

In sum, we find that Coleman failed to preserve his argument regarding ineffective assistance of trial counsel and that his argument the evidence was insufficient to support his convictions fails.

AFFIRMED.