IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. GALVAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PHILLIP M. GALVAN, JR., ALSO KNOWN AS PHILLIP GALVIN, APPELLANT.

Filed January 19, 2021.    No. A-19-1018.

Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed.

Donald L. Schense, of Law Office of Donald L. Schense, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Phillip M. Galvan, Jr., also known as Phillip Galvin, appeals his conviction in the district court for Sarpy County of first degree sexual assault. On appeal, he challenges the sufficiency of the evidence to support the conviction, the district court's decision to allow the jury to rehear a recording during deliberations, and his sentence. We affirm.

## BACKGROUND

In June 2018, Galvan was charged with the first degree sexual assault of J.S. A jury trial was held in June 2019, and the evidence established that on the evening of May 10, 2018, J.S. and a friend went to a bar in Omaha, Nebraska. While there, they began to play pool with Galvan and a friend of his; J.S. and Galvan did not previously know each other. J.S. left to take her friend home and then returned to the bar where she socialized with Galvan and his friend. Eventually, Galvan's friend left the bar, and according to J.S., Galvan asked her for a ride home. J.S. testified

that she declined to give him a ride to his house because it was too far, but that she told him he could sleep on her couch and she would take him home in the morning.

After Galvan and J.S. arrived at J.S.' apartment, she got herself and Galvan each a beer, and they sat in her living room. J.S. drank some of her beer and then retrieved a pillow and blanket for Galvan, put it on the couch, and told him she was going to bed and would take him home in the morning. She then went into her bedroom, shut the door behind her, and went to sleep.

According to J.S., she later woke up to Galvan on top of her, pulling off her shorts and panties. She started yelling, and Galvan put his hand over her mouth. He then penetrated her with his penis. J.S. described that Galvan initially had one hand over her mouth and the other hand holding her wrists above her head. He then took his hand off of her mouth and put his penis in her mouth. She said she bit his penis, and he punched her in the back of the head. J.S. testified that she was screaming and kicked Galvan off of her, and then he left her apartment.

After Galvan left, J.S. called a man who is a father figure to her, who advised her to call the police. She then called 911. A recording of J.S.' 911 phone call was received into evidence at trial without objection from Galvan. The recording was played for the jury. The call lasted approximately 12 minutes, and it is clear that J.S. had difficulty speaking and answering questions, especially initially, because she was so upset. J.S. informed the 911 operator that she had just been "raped," and the operator asked her numerous questions, such as how the perpetrator got into her apartment, what he looked like, and whether he left on foot or in a vehicle. The operator remained on the line with J.S. until law enforcement arrived at her apartment.

The officer who responded to the 911 call described her interaction with J.S. at the apartment. She said that J.S. was visibly shaken up, crying, and hysterical, and her hands were shaking. J.S. told her what occurred, including that she had met Galvan at a bar and eventually offered to let him sleep on her couch. J.S. explained that she got herself and Galvan a beer before she went to her bedroom to go to sleep. The officer testified that J.S. told her that she was woken up by Galvan on top of her, holding her hands above her head, and having sex with her. J.S. told the officer that she tried to scream, so Galvan put his hand over her mouth, and that he then forced her to give him oral sex before she kicked him off of her. The officer stated that she asked J.S. whether she ever consented to vaginal or oral penetration with Galvan, and J.S. said she did not. Law enforcement searched J.S.' apartment and located a used condom in a bathroom trash can. The condom contained DNA from both Galvan and J.S.

After J.S. talked to law enforcement at her apartment, she went to a hospital for a sexual assault examination. The nurse who conducted the examination testified that J.S. told her that she had been "raped." The nurse described that J.S. was visibly very upset, very anxious, withdrawn toward herself, and crying. As J.S. described the assault to the nurse, she became significantly more distressed and upset and had "difficulties talking about everything." The nurse testified that J.S. told her that she had been awoken by Galvan holding her hands above her head and vaginally penetrating her. J.S. said that she told Galvan to get out of her room and was able to push him off, but he then forced her to perform oral sex on him before she was able to get him to leave.

Through cross-examination of the various witnesses, the defense pointed out numerous inconsistencies in J.S.' statements, including that she returned to the bar after taking her friend home so she could finish beer that remained in a pitcher she had bought when the video

surveillance from the bar showed that the pitcher was empty when she left. The defense also highlighted the unlikelihood that Galvin entered J.S.' bedroom after she had gone to sleep and was able to locate a condom on a cooler behind her door in the dark when he had never been in the room before.

After the State rested its case at trial, Galvan moved to dismiss the charge against him, arguing that the State failed to meet its burden of proof. The district court denied the motion.

During deliberations, the jury asked the district court whether it could have equipment to listen to and/or watch the recorded exhibits. Galvan objected to allowing the jury to rehear the 911 call. He argued that allowing the jury to do so may be unfairly prejudicial and inflammatory in nature. The court overruled the objection, finding that the recording of the 911 call was not testimonial in nature and that therefore it would not be improper to allow the jury to review it. The court offered the following response to the jury: "You are provided with a computer to review the exhibits. The bailiff will remain with you -- with the jury while they view the exhibits and remove the computer when they are through."

The jury ultimately found Galvan guilty. He filed a motion for new trial, which was denied. Galvan was subsequently sentenced to 10 to 15 years' imprisonment. He appeals.

## ASSIGNMENTS OF ERROR

Galvan assigns that (1) there was insufficient evidence to sustain the conviction, (2) the district court erred in denying his motion to dismiss at the close of the State's evidence, (3) the district court erred in allowing the jury to listen to the 911 call recording during deliberations, and (4) the district court erred in imposing an excessive sentence.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

A trial court's decision to allow a jury during deliberations to rehear or review evidence, whether such evidence is testimonial or nontestimonial, is reviewed by an appellate court for an abuse of discretion. *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014).

When a trial court's sentence is within the statutory guidelines, the sentence will be disturbed by an appellate court only when an abuse of discretion is shown. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019).

## ANALYSIS

*Sufficiency of Evidence and Motion to Dismiss.*

Galvan first argues that the evidence was insufficient to sustain his conviction. Relatedly, he argues that the district court erred in denying his motion to dismiss on the grounds that the

evidence was insufficient. He points out the numerous inconsistencies in J.S.' statements and concludes that there was simply insufficient credible evidence to support the conviction. Given our standard of review, we reject this argument.

The information charged Galvan with violating Neb. Rev. Stat. § 28-319(1)(a) and/or (b) (Reissue 2016), and the district court instructed the jury on both of these alternatives. As relevant to the charges, § 28-319(1) provides that a person is guilty of first degree sexual assault if he or she subjects another person to sexual penetration (a) without the consent of the victim or (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct. A sexual assault victim may express a lack of consent through conduct, and the victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent. See Neb. Rev. Stat. § 28-318 (Supp. 2019).

In the present case, J.S. explained that she was asleep in her bed and woke up to Galvan on top of her, pulling off her shorts and panties. She started yelling, and Galvan put his hand over her mouth before penetrating her with his penis. According to J.S., Galvan had one hand holding her wrists above her head while his other hand was initially covering her mouth before he removed his hand and put his penis in her mouth. J.S. testified that she bit Galvan's penis, and he then punched her in the back of the head. She said that she was screaming and then kicked him off of her and then he left her apartment.

The sexual assault nurse examiner described the information J.S. provided to her about the assault, which mirrors J.S.' testimony detailed above, as well as J.S.' demeanor during the exam. According to her, J.S. was visibly very upset, very anxious, withdrawn toward herself, and crying. As J.S. described the details of assault to the nurse, J.S. became significantly more distressed and upset. J.S. told the nurse that she told Galvan to get out of her room and that she was able to push him off of her.

The law enforcement officer who responded to the 911 call testified similarly, describing that J.S. was visibly shaken up and crying, her hands were shaking, and she was "hysterical." The officer also provided the information that J.S. reported to her, which was that J.S. was asleep in her bed when she woke up to Galvan on top of her, holding her hands above her head, penetrating her with his penis, and then forcing his penis in her mouth. The officer testified that she asked J.S. whether she ever consented to vaginal or oral penetration from Galvan, and J.S. said she did not. Viewing all of this evidence in the light most favorable to the State, J.S.' testimony that she yelled, screamed, bit Galvan's penis, and kicked and/or pushed him off of her is sufficient such that a reasonable jury could find that she did not consent to sexual penetration.

On appeal, Galvan points out various inconsistencies in information J.S. provided throughout the case to law enforcement, during her sexual assault examination, during her deposition, and at trial. He also questions the believability of the sequence of events and J.S.' reasons for taking him to her apartment. We keep in mind, however, that in reviewing the sufficiency of the evidence, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are solely for the jury. See *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018). In deciding that Galvan was guilty, the jury clearly found J.S.' testimony to be credible, despite Galvan pointing out inconsistencies in her statements through

cross-examination, and we do not reweigh that decision on appeal. Further, the State is not required to corroborate a victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient. See, Neb. Rev. Stat. § 29-2028 (Reissue 2016); *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Accordingly, we conclude that the evidence is sufficient to establish that Galvan subjected J.S. to sexual penetration without her consent. Therefore, the district court did not err in accepting the jury's verdict of guilty and denying Galvan's motion to dismiss at the close of the State's evidence.

Having found that the evidence was sufficient to establish Galvan's guilt under § 28-319(1)(a), we need not address whether he knew or should have known that J.S. was mentally or physically incapable of resisting or appraising the nature of her conduct. When a defendant was charged in alternative ways with committing an offense, the jury could convict if it found there was sufficient evidence of either alternative; thus, the judgment of conviction must be affirmed if the evidence is sufficient to support either of the State's alternative theories of guilt. *State v. McCurdy, supra*. After finding sufficient evidence to support a conviction under one theory, an appellate court need not consider whether the evidence was sufficient to support the alternative theory or theories of guilt. See *id*.

*Recording of 911 Call.*

Galvan next assigns that the district court erred in allowing the jury to listen to the 911 call recording during deliberations. He claims that the recording was testimonial evidence and that allowing the jury to rehear it during deliberations was highly and unduly prejudicial to him. We find no abuse of discretion in the district court's ruling.

In *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000), *disapproved on other grounds*, *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), the Nebraska Supreme Court created heightened procedures by which testimonial evidence could be reheard by the jury during deliberations. The Supreme Court explained that when a jury makes a request to rehear certain evidence, the common-law rule requires that a trial court discover the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis. *Id*. If, after this careful exercise of discretion, the court decides to allow some repetition of the tape-recorded evidence for the jury, it can do so in open court in the presence of the parties or their counsel or under other strictly controlled procedures of which the parties have been notified. *Id*.

Thereafter, the Supreme Court clarified that the heightened procedures outlined in *Dixon*, should apply only when the recording at issue contains testimonial evidence and that the heightened procedures should not apply to nontestimonial evidence merely because such evidence is verbal in nature and is contained in an audio or video recording. *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014). "Testimonial evidence" for purposes of the heightened procedures encompasses only live testimony at trial by oral examination or by some substitute for live testimony that is a recording of an examination conducted prior to the time of trial and for use at trial. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

Here, the recording at issue was the 911 call J.S. placed after she had been sexually assaulted. Although the 911 operator asked J.S. numerous questions, and there was the potential

that a recording of the call could be used at trial, we conclude that the recording was not a recording of an examination conducted prior to the time of trial for use at trial. The 911 operator was not asking questions of J.S. in an effort to gather information that could be used at trial as a substitute for live testimony; rather, she was gathering information in order to determine how to assist J.S. In addition, J.S. testified and was subject to cross-examination at trial. The recording of the call was not admitted into evidence as a substitute for her live testimony at trial. We agree with Galvan that J.S.' call to 911 was likely made in contemplation of formal charges and future court proceedings. It is not unreasonable to surmise that J.S. called 911 for assistance and would hope that the perpetrator of her assault would ultimately be arrested and charged with a crime. However, we cannot say that the 911 call was recorded and questions were asked of J.S. in order to be used as a substitute for live testimony at trial. Thus, the district court properly classified the recording as nontestimonial evidence. As such, the heightened procedures set forth in *State v. Dixon, supra*, were not applicable.

The question then becomes whether the district court abused its discretion in allowing the jury to rehear the recording during deliberations. Under Nebraska case law, the trial judge has discretion to allow the jury to reexamine evidence during deliberations. *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013). Under this rule, trial courts have broad discretion in allowing the jury to have unlimited access to properly received exhibits that constitute substantive evidence of the defendant's guilt. *Id*. A trial court's decision to allow a jury during deliberations to rehear or review evidence, whether such evidence is testimonial or nontestimonial, is reviewed by an appellate court for an abuse of discretion. *State v. Vandever, supra*.

Galvan asserts that by allowing the recording to be replayed during deliberations, the fear is that the jury may give undue emphasis to the part of the evidence which is reheard and that is exactly what happened in this case. The heightened standards which require the trial court to weigh the probative value of the testimony against the danger of undue emphasis and allow the court to strictly control the procedures for reviewing tape-recorded evidence apply only to testimonial evidence, however, and we have found that the recording was substantive, nontestimonial evidence. See *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014). Thus, the district court was not required to weigh the danger of the jury placing undue emphasis on the recording before allowing access to it. The procedure followed by the district court in this case--allowing the bailiff to remain with the jury while it reviewed the recording on a computer and then removing the computer when the jury was finished--was within the court's discretion. We therefore reject Galvan's arguments that the court abused its discretion in this respect.

*Excessive Sentence.*

In his final assigned error, Galvan contends that the district court imposed an excessive sentence. We find no abuse of discretion in the sentence imposed.

First degree sexual assault is a Class II felony. § 28-319(2). Class II felonies are punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Supp. 2019). Thus, Galvan's sentence of 10 to 15 years' imprisonment is within the statutory limits, and we review it for an abuse of discretion.

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Galvan recognizes that his sentence is within the statutory limits, but he argues that the district court failed to properly consider all of the mitigating factors such as his success while on pretrial release, his background and family, his young age, his lack of criminal history, his history of employment, and the fact that he essentially turned his life around in the 18 months leading up to trial.

Despite Galvan's claims, the district court made clear at sentencing that it reviewed all of the information contained in the presentence investigation report and considered all of the statutorily required sentencing factors. The court noted that Galvan had not shown any insight or accepted any responsibility for what happened. The court found persuasive the statements contained in a psychosexual evaluation that Galvan underwent prior to sentencing that indicated that Galvan viewed himself as the victim in this case as opposed to the perpetrator and that Galvan could be expected to be noncompliant with treatment recommendations and possibly other aspects of probation requirements. Considering all of the information reviewed, the district court did not believe that a probationary sentence would be appropriate. There is nothing in the record indicating that the court did not consider all of the required sentencing factors or considered any inappropriate factors. Based on the court's explanation at sentencing and our review of the record, we find that the sentence imposed by the court was not an abuse of discretion.

## CONCLUSION

We conclude that the evidence presented at trial was sufficient to sustain the conviction for first degree sexual assault. Additionally, the court did not abuse its discretion in allowing the jury to review the recording of the 911 call during deliberations or in ordering the sentence imposed. The conviction and sentence are therefore affirmed.

AFFIRMED.