IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BAKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRIAN J. BAKER, APPELLANT.

Filed October 11, 2022.    No. A-21-987.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Kurt P. Leffler for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Following a jury trial in the Lancaster County District Court, Brian J. Baker was convicted of possession of a controlled substance (methamphetamine). He was sentenced to 1 year of probation and ordered to pay a $1,000 fine. Baker appeals his conviction and sentence, claiming that his trial counsel was ineffective for numerous reasons. We affirm.

## BACKGROUND

On May 12, 2020, shortly after 8 p.m., approximately eight law enforcement officers executed a search warrant for narcotics, specifically methamphetamine, at a residence on Madison Avenue in Lincoln, Nebraska. The residence was a "flop house," containing several rooms that were rented out on a short-term basis. During the execution of the search warrant, 13 people were found in various areas of the residence, along with methamphetamine pipes, marijuana pipes,

baggies, and digital scales. As a result of the search warrant, numerous people were arrested, including Baker.

During the execution of the search warrant, Baker and a woman were found in a bedroom in the basement. In the room, which was approximately 8 feet by 8 feet, there was a bed, a couch, a coffee table, and an end table. When law enforcement entered the room, Baker and the woman were seated on the couch with the coffee table in front of them. On top of the coffee table there was "a variety of miscellaneous items, a drink, a wallet, some money [that was] sprawled out, [and] some cigarettes." The lower area of the coffee table contained a cabinet with doors; the doors of the cabinet were open and in the cabinet law enforcement observed a "glass meth pipe that appeared to have burnt residue and some white crystalline residue within it." The pipe pretested positive for the presence of amphetamines, and at trial, the parties stipulated that the Nebraska State Patrol Crime Lab subsequently confirmed that the pipe contained methamphetamine. Two cell phones were found on the couch, and the cell phone belonging to Baker contained incoming text messages, one of which said, "911, 911, smash your phone now."

On May 13, 2020, the State filed a complaint in the county court for Lancaster County, charging Baker with one count of possession of a controlled substance (methamphetamine), a Class IV felony, in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2020). On February 24, 2021, Baker waived his right to a preliminary hearing and the matter was bound over to the district court. On March 18, the State filed an information in the district court charging Baker with the same count as in the complaint.

A jury trial took place on August 10 and 11, 2021. In addition to the facts previously provided, other evidence was adduced. Baker testified in his own behalf. He explained that he did not live at the Madison Avenue residence; however, he did work there, doing things such as mowing and minor maintenance, every week or two for the owner, 75-year-old Walter Jiles. Baker said that on May 12, 2020, the day the search warrant was executed, he spent more than 6 hours at the residence cleaning out the basement bedroom after the occupants were evicted for nonpayment of rent. He claimed that he had never seen the methamphetamine pipe that was found in the coffee table cabinet, and he did not know the pipe was in the cabinet. As for the text messages on his cell phone, one of which said, "911, 911, smash your phone now," Baker stated that he let a resident use his cell phone that day, "so I don't know that those were messages for me." Baker stated that the money on the coffee table, $640, was his social security disability payment "which was taken out of [his] back pocket by police" after he was handcuffed.

The jury found Baker guilty of one count of possession of a controlled substance (methamphetamine) and the district court entered judgment on the verdict. On October 28, 2021, Baker was sentenced to 1 year of probation, to include a deferred and waivable period of 90 days in jail. As part of the terms and conditions of his probation, Baker was ordered to pay a $1,000 fine.

Baker appeals.

### ASSIGNMENTS OF ERROR

Baker assigns that his trial counsel was ineffective because counsel (1) pushed him to reject the prosecution's plea offer, (2) did not secure photos from Baker's phone which showed that he was not in possession of the drug pipe he was convicted of possessing, (3) did not properly

communicate with Baker in order to prepare for trial, (4) failed to collect evidence that Baker and trial counsel agreed upon, including police body camera video, (5) did not call Jiles to testify at trial, (6) did not have the drug pipe retested even though they agreed that this should be done, (7) made statements to the jury that were prejudicial to Baker, and (8) did not inquire about the money seized from Baker that was not included by police on the inventory of items seized following the search.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## ANALYSIS

### GENERAL LEGAL PRINCIPLES

Baker has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* at 415, 929 N.W.2d 494.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit, or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

With these governing principles in mind, we turn now to address Baker's claims of ineffective assistance of counsel.

## Rejection of Plea Offer

According to Baker, of the 13 people present in the residence when the search warrant was executed, "most were charged with a crime." Brief for appellant at 15. "The case against one defendant was dismissed, and each of the other defendants were offered a plea agreement wherein they pleaded guilty or no contest to a single misdemeanor count"; "[a]ll but [Baker] took the plea deal and paid a $500 fine." *Id.* The plea offer made to Baker and the others, along with the fine imposed on the others, was also mentioned by Baker's counsel at sentencing (different counsel than his trial counsel and appellate counsel). Baker said he rejected the plea offer, took the case to trial, was convicted of a felony, and "now suffers all of the impediments to his constitutional rights that a felony conviction can bring." *Id.* at 16-17.

Baker claims that his trial counsel was ineffective because counsel pushed him to reject the prosecution's plea offer and instead take the case to trial with promises that the case "would never see the inside of a courtroom," that the prosecution "did not have a case," and that counsel would "wipe the floor with" the prosecution's case. *Id.* at 5. Baker asserts his innocence and claims he was at the residence cleaning out a room for Jiles. Baker acknowledges that drugs and paraphernalia were found in the house, and a meth pipe was found in a coffee table next to him, "difficult facts to defeat at a trial." *Id.* at 16. He contends he wanted to accept the plea offer, but "trial counsel pushed him into taking the case to trial," *id.* at 15, "and the results were catastrophic," *id.* at 16.

Because any discussions between Baker and his trial counsel regarding the State's alleged plea offer are not in our record, we find the record on direct appeal is insufficient to review Baker's claim that trial counsel was ineffective for pushing him to reject the plea offer and instead taking the case to trial.

## Failure to Secure Photos on Phone

Baker claims that his trial counsel was ineffective for not securing photos from Baker's phone, which had been confiscated by police. Baker argues that "[t]hese photos, taken by [him] as he cleaned, were the only proof available to corroborate his testimony that he had found several items of drug paraphernalia in the small room earlier in the day," and "[w]ith this evidence, the jury could easily conclude that the drug pipe found in the room was part of a larger stash left behind by the previous tenants." Brief for appellant at 17. Baker asserts that he and his trial counsel "agreed to use the photos at trial to help show that the drug pipe was one of many that had belonged to the former residents, and not [Baker]," but trial counsel never requested the photos from the police nor was Baker asked about the photos during his testimony. *Id.* at 18.

Initially we note that Baker did not testify that he found several items of drug paraphernalia in the small room earlier in the day. Regardless, any discussion between Baker and his trial counsel about photos that may have been on Baker's phone and their possible use as exhibits or the basis of testimony at trial is not in our record. Accordingly, we find the record on direct appeal is insufficient to review Baker's claim that trial counsel was ineffective for failing to secure photos from his phone.

Baker claims that his trial counsel did not properly communicate with him by not "speaking with him for 4-5 months, missing over 40 phone calls, texts, and e-mails, then visiting with [him] for a total of about 30 [minutes] in the week before trial" and "that 30 minutes was highly disrupted." Brief for appellant at 18. Baker asserts that he and trial counsel "did not have enough time together to 'flesh out' and fully explore essential lines of inquiry to elicit evidence favorable to . . . Baker's case." *Id.* For example, "none of the police officers who had entered the small room where the pipe was found were asked whether the odor of smoked drugs was in the room." *Id.* Additionally, "the pipe was discovered inside a cluttered and dirty coffee table, yet the condition of the pipe was never explored"; "[h]ad it been in the same condition as the other junk in the coffee table, this would have been strong evidence that the pipe had been in the coffee table for some time and not removed from Mr. Baker's pocket or backpack that day." *Id.* Baker further asserts that trial counsel's failure to communicate "also weakened the direct examination of [him]," *id.* at 18; "[i]t is unimaginable that [he] could properly be prepared to testify without extensive trial preparation, and he had little to none." *Id.* at 22.

The quantity and quality of communications between Baker and his trial counsel are not in our record. Accordingly, we find the record on direct appeal is insufficient to review Baker's claim that trial counsel was ineffective for failing to properly communicate with him in order to prepare for trial.

## FAILURE TO COLLECT EVIDENCE

Baker claims that his trial counsel failed to collect evidence that they agreed upon, including police body camera video. He contends that he "specifically asked [trial] counsel to secure body camera footage for the officers' [sic] who entered the room, as that evidence would go a long way to solve the riddle of what was happening with the money when the officers first entered the room," "what happened to the money upon its seizure," and "where precisely the pipe was located and Mr. Baker's proximity to the pipe" for purposes of actual or constructive possession. Brief for appellant at 23.

Whether Baker specifically asked trial counsel to obtain body camera footage, and whether counsel obtained such footage and/or whether such footage would have been helpful at trial is not apparent from our record. Accordingly, we find the record on direct appeal is insufficient to review Baker's claim that trial counsel was ineffective for failing to obtain body camera footage.

## FAILURE TO CALL JILES TO TESTIFY

Baker claims that his trial counsel failed to call Jiles, "an essential witness," to testify at trial. Brief for appellant at 6. Baker argues that Jiles "was the only witness who could corroborate [his] testimony that [Jiles] hired [him] to clean out the belongings of a hoarder couple who had just been evicted from the room where the single item of drug paraphernalia had been found," and "[w]ithout this evidence, the jury was able to conclude that [he] had no other reason to be in the room except for drug related activity." *Id.* at 17. Jiles "could have testified that Mr. Baker did not own the coffee table which contained the meth pipe found by police." *Id.* at 22.

In response, the State argues that Baker cannot show prejudice because "it's unlikely Jiles would have testified at trial given that he owned the 'flop house' in which 13 people were arrested

for drug-related activity and Jiles himself was also arrested as part of the investigation," and "even if Jiles would have testified at trial, he would've had little to no credibility given the State's evidence and the fact that Jiles himself was arrested as part of this investigation." Brief for appellee at 10. Further, the State points out that even if Jiles testified as Baker suggests, the evidence still established that Baker was in the house where drug activity was occurring, he was in a room with one other person and there was "money in the table and a meth pipe in a cubby of the table; he had a large sum of cash in his pocket; and his phone received a text message that said '911, 911, smash your phone now' when police entered the house." *Id.* As the State observes, "Jiles' testimony would not have changed or diluted any of this evidence, so there is not a reasonable probability the result of trial would have been different" if trial counsel called Jiles as a witness. *Id.*

Whether Jiles would have testified at trial and his potential credibility problem are reasonable arguments, but nevertheless speculative. We do agree with the State, however, that given the other evidence adduced at trial, there is not a reasonable probability that Jiles' testimony would have changed the outcome of trial and thus prejudice cannot be established. This ineffective assistance of trial counsel claim fails.

FAILURE TO RETEST DRUG PIPE

Baker claims that trial counsel was ineffective for not having the drug pipe retested, even though the parties agreed that this should be done. Although law enforcement had the pipe tested for the presence of drugs, law enforcement's testimony acknowledged that the pipe was not tested for fingerprints or DNA. Baker argues that "those tests, if performed, could have shown that [he] never handled the pipe, and thus he did not throw it into the coffee table when he heard police approaching." Brief for appellant at 22. More specifically, he argues that had he possessed the pipe, "his fingerprints may have been on it," and "had his fingerprints not been on the pipe, the jury could easily conclude that the pipe was not his." *Id.* at 19. "Since [the pipe] was the only evidence against [him] and it was not found on his person, [t]rial counsel should have demanded that the pipe be tested," but did not do so. *Id.*

Whether trial counsel had the pipe tested for fingerprints and/or DNA, or counsel's reasons for not doing so, are not apparent from our record. Accordingly, we find the record on direct appeal is insufficient to review Baker's claim that trial counsel was ineffective for failing to have the pipe tested.

PREJUDICIAL STATEMENT DURING CLOSING ARGUMENT

Baker claims that his trial counsel made prejudicial statements to the jury. Baker contends that trial counsel was "trying to argue that there was no evidence offered that [Baker] actually owned the pipe, that there was insufficient evidence to prove that he physically or constructively possessed the pipe, and that it was not illegal for Mr. Baker to simply be present in the house," but "counsel misspoke when he reminded the jury that the police did not arrest everyone who was in the building." Brief for appellant at 19. Baker refers to the following statements made by trial counsel during closing arguments:

> We heard a lot of evidence about bad people and bad things going on in the house. But we know it's not illegal to be in the house because when the police raided it, they didn't arrest everybody. Had they arrested everybody in the house and said, guys, there's stuff

around here and you should have known, that's different. *They arrested the people who had stuff in their pockets or who they could prove had possession of a controlled substance. People didn't get arrested for just being there. He's allowed to be there. That's not against the law.*

(Emphasis supplied.) Baker claims the italicized statements above incriminated and contradicted him. He said that he took the stand to prove that even though he was arrested, he did not have possession of a controlled substance and was just there to perform work for Jiles.

In response, that State contends that "[i]t's apparent that trial counsel's comments, when read in context of the above paragraph and closing arguments as a whole, were not aimed at incriminating Baker," and that "counsel was simply making the point that a person's mere presence in the house was not enough for them to be guilty of drug-related activity, and relatedly, Baker's mere presence in the house was not enough for him to be found guilty." Brief for appellee at 11.

We agree with the State that when reading trial counsel's closing argument as a whole, trial counsel did not incriminate Baker. Trial counsel repeatedly noted the case was about "one thing," whether Baker knew the meth pipe was there, did Baker possess the pipe. Trial counsel reiterated that no other contraband was found in the room, and that Baker had explained he was at the house to do work for Jiles. Trial counsel reminded the jury that the State had the burden to prove beyond a reasonable doubt the elements of the charged offense, and counsel argued that the State failed to prove that Baker knew the pipe was there and failed to prove that Baker was "guilty of anything." When read as a whole, trial counsel's closing argument did not incriminate Baker. Because Baker cannot show prejudice, this claim of ineffective assistance of counsel fails.

FAILURE TO INQUIRE ABOUT MONEY

Baker claims that trial counsel was ineffective for not inquiring about approximately $640 seized from him but that was not included by police on the inventory of items seized following the search. Baker argues that the "[p]olice testified that, when they entered the room, they saw cash on the coffee table, and the prosecutor argued it appeared that Mr. Baker was counting drug money." Brief for appellant at 20. Baker contends that "[l]arge quantities of cash go hand in hand with the drug trade." *Id.* at 22. However, Baker points out that law enforcement never said how much money was recovered, and it was his own testimony that the amount was $640 and that it was from his disability payment. Baker argues:

Significantly, that money now seems to have disappeared. It is not included on the list of property seized from the residence, and that list is not in the Transcript because it is not in Mr. Baker's case file. Trial counsel did not examine any of the witnesses about its seizure or whereabouts, and it's [sic] disappearance could have been used to impeach the police officers, counter the prosecutor's opening statement, as well as attempt the [sic] locate the money.

*Id.* at 20.

Even if the money was not listed on an inventory of items seized by police, the fact that money was in the room when the search warrant was executed is undisputed. Baker's own testimony at trial established the amount of money that was found in the room, regardless of

whether it was on the coffee table or in his back pocket. We fail to see how the physical money or its disappearance could have been used to "impeach" the officers or counter the prosecutor's opening statement. Because Baker cannot show prejudice regarding the money, this claim of ineffective assistance of counsel fails.

PRELIMINARY HEARING

We note that in the "Statement of Facts" section of his brief, Baker stated that if he is granted a hearing on his ineffective assistance of counsel claims, he "will adduce the following facts which are not currently in the court record, or are only partially in the record," brief for appellant at 9, including that "[t]rial counsel and Mr. Baker agreed to demand a preliminary hearing, but trial counsel then surprised Mr. Baker by waiving the preliminary hearing without first communicating with Mr. Baker" and "[t]aken off guard, Mr. Baker told the court that he consented," *id.* at 11. However, Baker neither specifically assigns nor specifically argues the preliminary hearing issue, and therefore we cannot get to the merits of his claim on direct appeal and he has not preserved this issue. See, *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court); *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019) (when defendant's trial counsel is different from counsel on direct appeal, defendant must raise on direct appeal any issue of trial counsel's ineffective performance known to defendant or apparent from record).

CONCLUSION

For the reasons stated above, we find that Baker's following claims of ineffective assistance of trial counsel fail: failing to call Jiles as a witness, making statements to the jury that were prejudicial to Baker, and not inquiring about the money seized from Baker that was not included by police on the inventory of items seized following the search. The record on direct appeal is insufficient to address Baker's remaining ineffective assistance of trial counsel claims.

We affirm Baker's conviction and sentence.

AFFIRMED.